488 F.2d 1215
 John J. HARTMANN, Individually, and on behalf of all others
similarly situated, Appellant,
v.
George M. SCOTT, Individually, and as County Attorney for
the County of Hennepin, et al., Appellees.
 No. 72-1692.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 10, 1973.
Decided Dec. 6, 1973.
 
 Lynn S. Castner, Minneapolis, Minn., for appellant.
 Craig R. Anderson, Special Asst. Atty. Gen., St. Paul, Minn., for appellees.
 Before HEANEY, STEPHENSON and WEBSTER, Circuit Judges.
 WEBSTER, Circuit Judge.
 
 
 1
 John J. Hartmann appeals from an order of the District Court denying his motion to convene a three-judge court to consider his challenge to the constitutionality of certain provisions of the Minnesota statute adopting the Interstate Compact on Mental Health; dismissing defendants-appellees Hursh, Sheppard and Lightburn for failure of appellant to exhaust state remedies; denying appellant's motion for a preliminary injunction; and striking all class action allegations.[1]
 
 
 2
 This case presents for our consideration, in light of Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (May 7, 1973), whether one in custody may avail himself of the Civil Rights Act, 42 U.S.C. Sec. 1983, to challenge the constitutionality of portions of a statute which is the basis for his confinement.
 
 
 3
 Hartmann was originally civilly committed to the Minnesota Security Hospital by the State of Minnesota on November 1, 1951, as mentally ill and dangerous. In 1967 he unsuccessfully challenged his commitment in State ex rel. Hartmann v. Lund, 277 Minn. 398, 152 N.W.2d 514 (1967), cert. denied, 390 U. S. 967, 88 S.Ct. 1078, 19 L.Ed.2d 1171 (1968).[2] After experiencing a series of coronary seizures, Hartmann was temporarily transferred to Anoka State Hospital, from which he escaped on April 14, 1970.
 
 
 4
 Acting on an order issued by Minnesota Probate Judge Melvin Peterson, Hartmann was apprehended September 18, 1970 by police in New Mexico, where he had resided without incident and without hiding his identity following his escape in Minnesota. He thereupon brought an action for habeas corpus in a New Mexico state court, pursuant to which a complete psychiatric examination was conducted. A hearing was held at which the State of Minnesota was represented by a Minnesota psychiatrist and by defendant-appellee Gaffney, who appeared as a special prosecutor. Finding Hartmann to be sane and safe to be at large, on December 18, 1970 the New Mexico court ordered him released.
 
 
 5
 Early in January, 1971, Hartmann was arrested and jailed in Littleton, Colorado on a misdemeanor charge. He was represented by two Colorado public defenders but was never brought before the court. On or about January 11, 1971, Deputy Sheriffs from Hennepin County, Minnesota at the direction of defendants-appellees Scott and Gaffney transported Hartmann against his will and without a hearing from Colorado to Minnesota. There, Minnesota health officials (defendants-appellees Hursh, Sheppard and Lightburn) reincarcerated him in the Minnesota Security Hospital, where he remains. The Deputy Sheriffs acted pursuant to a second order of apprehension issued by Minnesota Probate Judge Peterson after the New Mexico decree of sanity and release. Judge Peterson's order was predicated on Minnesota Department of Public Welfare Regulations VII-7222 and VII-7223[3] and on Articles V and VI of the Interstate Compact on Mental Health, Minn. Stat.Ann. Sec. 245.51 (1971),[4] of which Minnesota, New Mexico, Colorado, and approximately 37 other states are member-parties.
 
 
 6
 Hartmann filed a class action in the United States District Court in Minnesota alleging deprivation of his civil rights in violation of 42 U.S.C. Sec. 1983 and conspiracy to deprive him of his civil rights in violation of 42 U.S.C. Sec. 1985(2) and (3) and Sec. 1986.[5] His complaint named as defendants George M. Scott, individually and as County Attorney for the County of Hennepin; James Gaffney, individually and as Assistant County Attorney for the County of Hennepin; John W. Haack, individually and as Deputy Sheriff and Jailer for the Littleton Jail, County of Arapahoe, State of Colorado; Morris Hursh, individually and as Commissioner of the Minnesota State Department of Public Welfare; Charles Sheppard, individually and as Medical Director of the Minnesota Security Hospital; William Lightburn, individually and as Administrator of the Minnesota Security Hospital; and John Doe, Richard Roe and Mary Hoe.
 
 
 7
 The Relief Sought. Hartmann requested that a three-judge court be convened pursuant to 28 U.S.C. Secs. 2281 and 2284 on the ground that the relief sought was an injunction against the enforcement of the state statute adopting the Interstate Compact and the Minnesota regulations as well as a declaratory judgment that the statute and regulations are unconstitutional, facially and as applied. In addition, Hartmann asked for a declaratory judgment pursuant to Fed.R.Civ.P. 81(b) on the binding nature of the New Mexico decree and on the unconstitutionality of defendants' transportation of him from Colorado to Minnesota. He further sought an order in the nature of mandamus requiring the named defendants to discharge him from the Minnesota Security Hospital and to provide him free transportation back to Littleton, Colorado, and monetary damages ($1.00 plus costs and attorneys' fees) against defendants Scott and Gaffney, who allegedly conspired to deprive him of his constitutional rights.
 
 
 8
 Action by Trial Court. In an unpublished memorandum, Judge Lord ordered stricken all references to class representation because there was (a) no definition of the class represented, (b) no allegation that the class was so numerous that all members could not be joined and (c) no indication that Hartmann would be a proper representative of a class. He then sustained a motion to dismiss defendants Hursh, Sheppard and Lightburn, holding that the action was in reality a habeas corpus action and that Hartmann had failed to exhaust his state remedies; and Judge Lord likewise denied the request for a three-judge court, holding that the provisions of Secs. 2281 and 2284 do not apply to habeas corpus. However, he overruled the motion for summary judgment by defendants Scott and Gaffney, against whom Hartmann sought only nominal damages.
 
 
 9
 * Since appellees contend that the trial court's order dismissing some, but not all of the defendants, was not appealable, we turn first to a consideration of our jurisdiction to entertain this appeal.
 
 
 10
 As a result of the trial court's order only Scott and Gaffney remain as defendants. Against them Hartmann seeks $1.00 in damages for transporting him from Littleton, Colorado to St. Peter, Minnesota, under circumstances which he contends deprived him of his constitutional rights under color of state law. The trial court made no express determination that there was no just reason for delay. Its order is therefore not a final judgment and, under ordinary circumstances, would not be appealable. Fed.R.Civ.P. 54(b); 28 U.S.C. Sec. 1291.
 
 
 11
 Nor does it follow that because Hartmann sought injunctive relief against defendants Hursh, Sheppard and Lightburn the appeal must be entertained as an appeal from an interlocutory order refusing an injunction. See 28 U.S.C. Sec. 1292(a)(1). The trial court's order did not dispose of any of the demands for injunctive relief. It did result in the dismissal of the defendants who, as state officials would be necessary parties in an action to enjoin enforcement of a state law, and thereby precluded the designation of a three-judge court with authority to grant such injunctive relief. 28 U.S.C. Sec. 2281.
 
 
 12
 Appellate jurisdiction under the three-judge court statute has been described as "so complex as to be virtually beyond belief." ALI Study of the Division of Jurisdiction Between State and Federal Courts 332 (1969). It has been well established, however, that a Court of Appeals has jurisdiction to review a District Court's refusal to convene a three-judge court. Schackman v. Arnebergh, 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865 (1967); Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Firkins v. State of Colorado, 434 F.2d 1232 (10th Cir. 1970);[6] McMillan v. Board of Education of State of New York, 430 F.2d 1145, 1148 (2d Cir. 1970); Gold v. Lomenzo, 425 F.2d 959 (2d Cir. 1970).
 
 
 13
 In this case, the court did not directly pass upon the question "whether the constitutional issue raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute." Idlewild Bon Voyage Liquor Corp. v. Epstein, supra 370 U.S. at 715, 82 S.Ct. at 1296.
 
 
 14
 Instead, the trial court addressed itself to the motion of Hursh, Sheppard and Lightburn to dismiss the complaint on the grounds that the complaint as to them was in the nature of a habeas corpus petition and that Hartmann had not exhausted state court remedies. The court held that because Hartmann was "attacking the legality of his detention" his civil rights action was a plea for habeas corpus relief in disguise. Accordingly, he granted the motion to dismiss without expressly ruling upon Hartmann's request to designate a three-judge court.
 
 
 15
 We conclude from this procedural background that we have jurisdiction to hear this appeal for two reasons. First, we perceive no practical difference in terms of our power to review under Schackman, supra, between a formal order denying the motion to designate a three-judge court and the situation presented in this case by dismissal of the parties defendant necessary to the maintenance of a three-judge case. If in fact a substantial constitutional question has been presented, the single trial judge has no authority to dismiss the case. 28 U.S.C. Sec. 2284(5). Snyder's Drug Stores v. Taylor, 227 F.2d 162 (8th Cir. 1955). See Aaron v. Cooper, 261 F.2d 97, 105 (8th Cir. 1958).
 
 
 16
 Second, the dismissal of the state defendants disposed of Hartmann's constitutional attack upon the Minnesota statute and regulations issued thereunder. Unlike in Lyons v. Davoren, supra, no avenue of declaratory relief remained; no opportunity for injunctive relief could be afforded against those responsible for the statute's implementation. Only a claim based upon rough handling and kidnapping under the statute was left in the case, a claim so trivial in relation to the main thrust of the suit that Hartmann asked only $1.00 in damages from the remaining county defendants Scott and Gaffney. The available relief has been severely contracted. Build of Buffalo, Inc. v. Sedita, 441 F.2d 284 (2d Cir. 1971). See 6 J. Moore, Federal Practice p 54.30 [2.-1], at 452 (2d ed. 1972).[7] For all practical purposes, the litigation has been terminated. "Where the effect of a district court's order, if not reviewed, is the death knell of the action, review should be allowed." Eisen v. Carlisle & Jacquelin, 370 F.2d 119, 121 (2d Cir. 1966), cert. denied, 386 U.S. 1035, 87 S. Ct. 1487, 18 L.Ed.2d 598 (1967), cert. granted, 414 U.S. 908, 94 S.Ct. 235, 38 L.Ed.2d 146 (1973). See also Cohen v. Beneficial Loan Co., 337 U.S. 541, 69 S. Ct. 1221, 93 L.Ed. 1528 (1949).
 
 
 17
 Having found the requisite appellate jurisdiction, we proceed to an examination of the basis for the order of the trial judge dismissing the state defendants.
 
 II
 
 18
 Judge Lord's memorandum filed October 12, 1972 predated the decision of the Supreme Court in Preiser v. Rodriguez, supra. Anticipating in part but unguided by its teachings, he found that "[t]he declaratory relief requested in the instant case is totally integrated with the claim that plaintiff's detention is illegal and by its very nature encompasses the same questions as must be determined in the habeas corpus action." Observing that Hartmann was directly challenging the legality of his detention and that the ultimate relief sought was his release from custody, Judge Lord held that this was "a case that should be treated as a habeas corpus petition." He thereupon dismissed the complaint as to defendants Hursh, Sheppard and Lightburn for failure of Hartmann to exhaust state court remedies. In so doing, he distinguished this case from Sostre v. McGinnis, 442 F.2d 178 (2d Cir. 1971), cert. denied, sub nom. Sostre v. Oswald, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740, cert. denied sub nom. Oswald v. Sostre, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972), and Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971), in which the respective plaintiffs were permitted to pursue their civil rights claims challenging conditions of their confinement because they were not seeking release from custody as their ultimate objective.
 
 
 19
 At the heart of any distinction between resort to the Civil Rights Act to vindicate a constitutional right by one in custody, on the one hand, and use of the federal habeas corpus statute, 28 U.S.C. Sec. 2254, on the other, is the requirement that under Sec. 2254 state remedies shall first have been exhausted.[8]
 
 
 20
 In a civil rights action, the plaintiff need not first seek redress in a state forum. Monroe v. Pape, 365 U.S. 167, 180-183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed. 2d 647 (1967); Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968). To some extent, the two remedies have been held to be mutually available to persons in custody. Thus, a prisoner may challenge the conditions of his confinement by habeas corpus without the necessity of exhausting state remedies. Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); Wilwording v. Swenson, supra 404 U.S. at 251, 92 S.Ct. 407. At the same time, since prisoners in custody are not held to any stricter standard of exhaustion than other civil rights plaintiffs, Houghton v. Shafer, supra, conditions of confinement have been properly challenged in Sec. 1983 actions. Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); Wilwording v. Swenson, supra; Cooper v. Pate, 378 U. S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Jackson v. Bishop, 404 F.2d 571 (8th Cir. 1968). In Preiser v. Rodriguez, supra, the Supreme Court did not attempt to delineate the limits of habeas corpus as an alternative remedy to a proper action under Sec. 1983, but considered instead "the extent to which Sec. 1983 is a permissible alternative to the traditional remedy of habeas corpus." 411 U.S. at 500.
 
 
 21
 In Preiser, three separate New York actions were consolidated on appeal. In each action, the petitioners combined with a habeas corpus petition a civil rights complaint under Sec. 1983 challenging some aspect of their terms of confinement. Rodriguez contended that he had been unconstitutionally punished for refusal to disclose the source of contraband material in his possession, thereby depriving him of good-conduct-time credits without due process of law. Katzoff contended that he had been deprived of good-conduct time as a result of disciplinary charges brought against him for making derogatory comments about prison officials in his diary. Kritsky contended that he had been summarily punished by deprivation of good-conduct-time credits for refusing to admit his part in advocating insurrection during a prison demonstration. The District Court in each case permitted the petitioner to proceed under Sec. 1983, notwithstanding his failure to exhaust state remedies. The Second Circuit en banc affirmed, relying upon Wilwording v. Swenson, supra. The Supreme Court granted certiorari to consider the bearing of Wilwording upon this situation, saying:
 
 
 22
 In that context, the question whether a state prisoner may bring an action for equitable relief pursuant to Sec. 1983, or whether he is limited to the specific remedy of habeas corpus, presents an unresolved and important problem in the administration of federal justice.
 
 
 23
 411 U.S. at 482, 93 S.Ct. at 1832.
 
 
 24
 Writing for the Court, Justice Stewart noted that habeas corpus had been extended through the years from a very limited inquiry into the jurisdiction of the committing court to "a remedy available to effect discharge from any confinement contrary to the Constitution or fundamental law, even though imposed pursuant to a conviction by a court of competent jurisdiction." Id. at 485, 93 S.Ct. at 1834.
 
 
 25
 From an examination of the evolution of habeas corpus relief in this country, Justice Stewart concluded that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Id. at 484, 93 S.Ct. at 1833. To the argument that the Civil Rights Act was available to prisoners in custody as an alternative remedy since its language was broad and no exhaustion was required, Justice Stewart responded that a state prisoner challenging his underlying conviction and sentence in a federal court was limited to habeas corpus by a more specific act of Congress. He concluded:
 
 
 26
 [T]he result must be the same in the case of a state prisoner's challenge to the fact or duration of his confinement, based . . . upon the alleged unconstitutionality of state administrative action. Such a challenge is just as close to the core of habeas corpus as an attack on the prisoner's conviction, for it goes directly to the constitutionality of his physical confinement itself and seeks either immediate release from that confinement or the shortening of its duration.
 
 
 27
 . . . In short Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of Sec. 1983.
 
 
 28
 Id. at 489-490, 93 S.Ct. at 1836 (emphasis added).
 
 
 29
 Turning then to Hartmann's claim for relief, we are bound by Preiser to hold that insofar as he seeks to challenge the fact or duration of his confinement his remedy is in habeas corpus and cannot be entertained in this action, for want of exhaustion of state remedies. Other relief demanded included: (1) to have dismissed defendants-appellees Hursh, Sheppard and Lightburn along with Scott and Gaffney enjoined from enforcing the Interstate Compact on Mental Health and regulations thereunder to cause the involuntary transfer of Hartmann or members of his class from another state to the State of Minnesota; (2) to compel them to discharge him from the Minnesota Security Hospital; and (3) to provide free transportation to Littleton, Colorado, pendente lite. Further, Hartmann sought a declaratory judgment that the Interstate Compact on Mental Health statute and regulations thereunder were unconstitutional on their face or as applied. The holding in Preiser precludes the federal court at this time from entertaining Hartmann's prayer for release. The only appropriate and permissible avenue for such relief is by habeas corpus.
 
 
 30
 We do not agree with the district court's finding, however, that Hartmann's other claims are so totally integrated with his claim of illegal detention that they cannot be separated from the habeas corpus action. Hartmann seeks declaratory relief that the Minnesota statute and regulations are facially unconstitutional. He seeks to enjoin the enforcement of that law and those regulations insofar as they would permit the involuntary transportation of Hartmann and members of his class from another state to the State of Minnesota. Hartmann is presently in Minnesota and neither the declaratory relief nor the injunctive relief would effect his release from confinement,[9] if as alleged, the statute and the regulations are facially unconstitutional. We know of no other means by which a person in custody could obtain declaratory and injunctive relief against the enforcement of such statutes. These claims, separate and distinct from Hartmann's claim for release, are not foreclosed simply because Hartmann is in custody and has not exhausted state remedies. Houghton v. Shafer, supra; McDonnell v. Wolff, 483 F.2d 1059 (8th Cir. Aug. 2, 1973). As the Court said in Preiser:
 
 
 31
 If a prisoner seeks to attack both the conditions of his confinement and the fact or length of that confinement, his latter claim, under our decision today, is cognizable only in federal habeas corpus, with its attendant requirement of exhaustion of state remedies. But, consistent with our prior decisions, that holding in no way precludes him from simultaneously litigating in federal court, under Sec. 1983, his claim relating to the conditions of his confinement.
 
 
 32
 411 U.S. at 499 n. 14, 93 S.Ct. at 1841.
 
 III
 
 33
 The appellant has argued extensively and persuasively the substantiality of the constitutional question presented in his request below for a three-judge court. That issue was not considered by the District Court and we do not pass upon it here. Neither do we attempt to resolve the right of appellant to maintain his action as a class action. We have recently held that under certain circumstances a class action could be appropriate in a habeas corpus proceeding. Williams v. Richardson, 481 F.2d 358 (8th Cir. 1973). In so doing, we called attention to the observation of the Ninth Circuit in Mead v. Parker, 464 F.2d 1108, 1112 (9th Cir. 1972):
 
 
 34
 It may be that the [district] court will ultimately decide that it is unnecessary to treat this as a class action, perhaps on the theory that, if the petitioners are entitled to relief, the relief will benefit all inmates, whether made parties or not. Or, the court might decide to treat the case as a class action on one or more of the grounds stated in Rule 23(b). A court has considerable latitude in deciding how best to proceed.
 
 
 35
 What was said there is of course clearly applicable to a Sec. 1983 proceeding, and a class action may be unnecessary to obtain the desired relief by a three-judge court. In any event, an order refusing to permit an action to be maintained as a class action which does not operate as the death knell of the action is not appealable as a final or interlocutory order, and the order of the trial court in striking the class action allegations is not properly before us at this time. Korn v. Franchard, 443 F.2d 1301 (2d Cir. 1971). See Lamarche v. Sunbeam Television Corp., 446 F.2d 880 (5th Cir. 1971); Lipsett v. United States, 359 F. 2d 956 (2d Cir. 1966). See also Eisen v. Carlisle & Jacquelin, supra.
 
 
 36
 We reverse the order of the District Court dismissing defendants Hursh, Sheppard and Lightburn. Upon remand, the District Court is directed to rule upon appellant's motion to designate a three-judge court. The pendency of this case will not preclude the appellant from simultaneously seeking habeas corpus relief in the appropriate state jurisdiction.
 
 
 37
 Reversed and remanded.
 
 
 
 [1]
 The District Court denied the motion of defendants Scott and Gaffney for judgment on the pleadings and for summary judgment
 
 
 [2]
 The case describes the circumstances surrounding Hartmann's original commitment
 
 
 [3]
 See Minn. Dept. of Public Welfare Manual, Revised, August 25, 1969:
 Interstate Movement of Patient VII-7222
 When a person admitted to a state hospital is found to be a non-resident, the hospital is to send full information about him at once to the Medical Services Division, Attention: Patient Transfers. Before deportation is authorized by the Department, there must be commitment in this state.
 Action to return a Minnesota resident who has been committed or apprehended in another state is a responsibility of the Department of Public Welfare, Division of Medical Services.
 Interstate Compact VII-7223
 If a nonresident mentally ill or mentally deficient patient has settlement in a state that is a member of the Interstate Compact, authorization may be given to provide care and treatment in a Minnesota state hospital.
 The Interstate Compact authorizes the party states to give such care and treatment to the mentally ill and mentally deficient as is necessary and desirable regardless of the residence or citizenship of the patient, the controlling factors being community safety and humanitarianism. The purpose of the Compact between the party states is to provide the necessary legal basis for institutional or other appropriate care and treatment of the mentally ill and mentally deficient under a system that recognizes the paramount importance of patient welfare and to establish the responsibilities of the party states in terms of such welfare. (see Minn.Stat., Sec. 245.51)
 States Carrying membership in the Compact are:
 Alaska Iowa New York South Dakota
Arkansas Kansas North Carolina Texas
Colorado Kentucky North Dakota Vermont
Connecticut Louisiana Ohio Virginia
Delaware Maine Oklahoma Washington
Hawaii Maryland Oregon West Virginia
Idaho Massachusetts Pennsylvania Wisconsin
Illinois New Jersey Rhode Island Wyoming
Indiana New Mexico South Carolina
 All plans involving the Compact are determined by the Division of Medical Services, Attention: Patient Transfers Supervisor, acting for the Commissioner of Public Welfare, who is designated as 'Compact Administrator'.
 Minn. Dept. of Revised
 Public Welfare August 25, 1969
 
 
 [4]
 Minn.Stat.Ann. Sec. 245.51 Art. V & VI:
 ARTICLE V
 Whenever a dangerous or potentially dangerous patient escapes from an institution in any party state, that state shall promptly notify all appropriate authorities within and without the jurisdiction of the escape in a manner reasonably calculated to facilitate the speedy apprehension of the escapee. Immediately upon the apprehension and identification of any such dangerous or potentially dangerous patient, he shall be detained in the state where found pending disposition in accordance with law.
 ARTICLE VI
 The duly accredited officers of any state party to this compact, upon the establishment of their authority and the identity of the patient, shall be permitted to transport any patient being moved pursuant to this compact through any and all states party to this compact, without interference.
 
 
 [5]
 Hartmann invoked the District Court's jurisdiction on the basis of 28 U.S.C. Sec. 1343
 
 
 [6]
 But cf. Lindauer v. Oklahoma City Urban Renewal Authority, 439 F.2d 761 (10th Cir. 1970), relying upon Lyons v. Davoren, 402 F.2d 890 (1st Cir. 1968), cert. denied, 393 U.S. 1081, 89 S.Ct. 861, 21 L.Ed.2d 774 (1969). The court in Lyons distinguished Idlewild Bon Voyage Liquor Corp. v. Epstein, supra, where the denial of the request for a three-judge court effectively operated to throw plaintiff out of court
 
 
 [7]
 "An incidental effect of [Rule] 54(b) should, however, be noted. If the district court fully adjudicates a claim for an injunction, its adjudication is, nevertheless, interlocutory if one or more other claims remain pending and the district court does not execute its certificate, but in that event the interlocutory order is appealable as an order granting or denying an injunction [under Sec. 1292(a)(1)]." 6 J. Moore, Federal Practice p 54.30, at 452 (2d ed.1972)
 
 
 [8]
 28 U.S.C. Sec. 2254 provides in pertinent part:
 (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
 (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
 (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.
 The Civil Rights Act, 42 U.S.C. Sec. 1983, provides:
 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen . . . or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 
 
 [9]
 Gomez v. Miller, 341 F.Supp. 323 (S.D.N. Y.1972), decided before Preiser, has, subsequent to Preiser, been affirmed without opinion. Miller v. Gomez, 412 U.S. 914, 93 S.Ct. 2728, 37 L.Ed.2d 141 (May 29, 1973). In that case, a three-judge court held that a person indicted but neither tried nor convicted of a felony may challenge in a Sec. 1983 action the constitutionality of a statute under which he was committed to a hospital for the criminally insane, since the limited relief sought would not result in his release from custody