**Robert FINNEY et al.,**
**Petitioners-Appellees,**

**v.**

**Terrell Don HUTTO et al.,**
**Respondents-Appellants.**

**No. 76–1406.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 16, 1976.

Decided Jan. 6, 1977.

Rehearing and Rehearing En Banc
Denied Feb. 3, 1977.

Robert A. Newcomb, Asst. Atty. Gen., Little Rock, Ark., for appellant; Jim Guy Tucker (Former Atty. Gen.), Robert A. Newcomb and Jack T. Lassiter, Asst. Atty. Gen., Little Rock, Ark., on the briefs.

Philip E. Kaplan, Little Rock, Ark., for appellee; Stanley Bass, New York City, Jack Holt, Jr., Philip H. McMath, Little Rock, Ark., on the brief.

Before HEANEY and ROSS, Circuit Judges, and VAN PELT, Senior District Judge.*

* The Honorable Robert Van Pelt, Senior Judge, United States District Court for the District of Nebraska, sitting by designation.

ROSS, Circuit Judge.

This appeal is the latest chapter in the seemingly endless litigation involving the constitutionality of the Arkansas state prisons.[1] The respondent-appellants are officials of the Arkansas Department of Correction. The petitioner-appellees are prisoners confined in Arkansas state prisons. In *Finney v. Hutto*, 410 F.Supp. 251 (E.D. Ark.1976), the district court,[2] pursuant to remand of this court, *Finney v. Arkansas Board of Corrections*, 505 F.2d 194 (8th Cir. 1974), held that the Arkansas prison system is still unconstitutional in certain respects. The court held, *inter alia*, that the Department's policy of sentencing inmates to indeterminate periods of confinement in punitive isolation is unconstitutional under the eighth and fourteenth amendments. *Finney v. Hutto, supra,* 410 F.Supp. at 278. The court awarded an attorneys' fee to petitioners' court appointed counsel in the amount of $20,000 to be paid out of funds allocated to the Department of Correction. The court also ordered the Department to pay the costs of litigation. *Id.* at 281–285. The appellants contest these aspects of the judgment entered below. We affirm.

*Indefinite Punitive Isolation.*

▉ Judge Henley described the conditions of punitive isolation in the following terms:

. An inmate sentenced to punitive isolation receives a sentence to confinement in an extremely small cell under rigorous conditions for an indeterminate period of time with his status being reviewed at the end of each fourteen day period. While most inmates sentenced to punitive isolation are released to population within less than fourteen days, many remain in the status in question for weeks or months, depending upon their attitudes as appraised by prison personnel. It is rare indeed that a prisoner is confined in

a cell by himself. Usually, he must share a cell with at least one other inmate, and at times three or more inmates are kept in the same cell which is equipped with extremely limited facilities. Assuming, and the court is not at all sure that the assumption is valid, that all of the isolation cells are equipped with two bunks, it follows that if three or four men are put in the same cell, and that frequently happens, one or two of them are going to have to sleep on the floor.

\* \* \* \* \* \*

As a class, the convicts confined in punitive isolation or in administrative segregation, for that matter, are violent men. They are filled with frustration and hostility, some of them are extremely dangerous, and others are psychopaths. Confined together under rigorous conditions in the same cell or in immediately adjacent cells, the convicts identify with each other and reinforce each other in confrontation with custodial personnel, and those personnel in turn identify with each other and reinforce each other in confrontation with the convicts.

\* \* \* \* \* \*

Inmate violence unavoidably produces a forcible response from prison personnel who may be required to use such things as night sticks and the chemical known as "Mace" to quell disorders. And the court is satisfied that at times the response is excessive, and is further satisfied that many of the episodes of violence that take place in the maximum security facility could be avoided readily if the guards were more professional and used better judgment and common sense in dealing with refractory inmates.

*Id.* at 275–277. The court concluded that " \* \* \* punitive isolation as it exists at Cummins today serves no rehabilitative purpose, and that it is counterproductive. It makes bad men worse. It must be

---

1. The long history of this litigation may be found in several reported decisions. *See Holt v. Sarver*, 300 F.Supp. 825 (E.D.Ark.1969); *Holt v. Sarver*, 309 F.Supp. 362 (E.D.Ark.1970), *aff'd* 442 F.2d 304 (8th Cir. 1971); *Holt v. Hutto*, 363 F.Supp. 194 (E.D.Ark.1973), *rev'd in part*, 505 F.2d 194 (8th Cir. 1974).

2. Honorable J. Smith Henley, Circuit Judge, sitting by designation.

changed." *Id.* Accordingly, the court held, *inter alia,* that confinement in punitive isolation for more than thirty days is cruel and unusual punishment and thus impermissible.[3] *Id.* at 278.

We affirm this holding on the basis of Judge Henley's well-reasoned opinion.

*Attorneys' Fees and Costs.*

The appellants vigorously contest the attorneys' fee award of $20,000 to be paid out of the funds allocated to the Department of Correction.[4] We affirm the award.

■ On October 19, 1976, at a time when this case was pending resolution on appeal, the Civil Rights Attorney's Fees Awards Act of 1976, Pub.L. No. 94–559 (Oct. 19, 1976), 90 Stat. 2641, was signed into law. This Act permits an award of a reasonable attorneys' fee to the prevailing party in an action such as this brought under 42 U.S.C. § 1983. It is clear that Congress intended the Act to apply to cases such as this pending resolution on appeal.[5] Since the Act was passed by Congress under, *inter alia,* the enabling clause of the fourteenth amendment, S.Rep. No. 94–1011, 94th Cong., 2d Sess. 5, U.S.Code Cong. & Admin. News, 1976, p. 5908, the award attorneys' fees is not barred by the eleventh amendment. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 457, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976).

■ The appellants complain that the district court erroneously forced the Department to pay the fee in view of the fact that the Department is not a named party. We disagree. The Act permits an order, as was entered in this case, requiring the award to be paid directly from the funds of a state agency, such as the Department of Correction, whether or not the agency is a named party. U.S.Code Cong. & Admin. News, 1976, p. 5912.

■ The petitioners, as private attorneys general, have vindicated the constitutional rights of Arkansas state prisoners. The award is thus justified under Public Law No. 94–559.[6] Furthermore, in view of the protracted nature of this litigation, the results obtained by the petitioners, and other factors enumerated in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir. 1974), the $20,000 award is reasonable.

■ The appellants also attack the award of costs which is to be paid by the Department of Correction. This award is both permissible under the eleventh amendment, *Fairmont Creamery Co. v. Minnesota,* 275 U.S. 70, 73–74, 48 S.Ct. 97, 72 L.Ed. 168 (1927), and reasonable.

3. The court carefully noted that the thirty day maximum applies only to punitive isolation, not segregated confinement under maximum security conditions.

4. This award was attributable to services of court appointed counsel in connection with the *Holt III* appeal and the present phase of this litigation. 410 F.Supp. at 282.

5. During House consideration of the measure, Representative Drinan stated:

I should add also that, as the gentleman from Illinois (Mr. Anderson) observed during consideration of the resolution on S. 2278, this bill would apply to cases pending on the date of enactment. It is the settled rule that a change in statutory law is to be applied to cases in litigation. In Bradley versus Richmond School Board, the Supreme Court expressly applied that longstanding rule to an attorney fee provision, including the award of fees for services rendered prior to the effective date of the statute.

122 Cong.Rec. 12,160 (daily ed. Oct. 1, 1976) (remarks of Representative Drinan). *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) involved the issue whether § 718 of the Education Amendments of 1972, which granted authority to federal courts to award a reasonable attorneys' fee in school desegregation cases, applied to a case where the propriety of the fee award was pending resolution on appeal when the statute became law. The Supreme Court held that it did. *Id.* at 710–724. Thus Representative Drinan's reference to the *Bradley* case is strong evidence that Congress intended this statute to apply to fee awards pending resolution on appeal.

6. Although, in view of the statute, we are not required to pass on the issue of bad faith, the record fully supports the finding of the district court that the conduct of the state officials justified the award under the bad faith exception enumerated in *Aleyska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–259, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

The petitioners' court appointed counsel are awarded $2,500 for their services on this appeal.

Affirmed.