John J. HARTMANN, Individually and on behalf of all others similarly situated, Plaintiff,

v.

James GAFFNEY, Individually, and as Assistant County Attorney for the County of Hennepin, Vera Likins, Individually, and as Commissioner of the Minnesota Department of Public Welfare, Charles Sheppard, Individually, and as Medical Director of the Minnesota Security Hospital, William Lightburn, Individually, and as Administrator of the Minnesota Security Hospital, and John Joe, Richard Roe and Mary Hoe, Defendants.

No. 4–71 Civ. 127.

United States District Court, D. Minnesota, Fourth Division.

Sept. 15, 1977.

Lynn S. Castner, Minneapolis, Minn., for plaintiff.

George M. Stephenson, Minneapolis, Minn., Warren Spannaus, Minnesota Atty. Gen., by Paul Zerby, Asst. Atty. Gen. and Thomas H. Jensen, Special Asst. Atty. Gen., St. Paul, Minn., Gary W. Flakne, Hennepin County Atty., by Jerome F. Chapman, Asst. Hennepin County Atty., Minneapolis, Minn., for defendants.

## MEMORANDUM AND ORDER

MILES W. LORD, District Judge.

Before the Court is plaintiff's motion for an order awarding reasonable attorneys' fees and costs to plaintiff's attorneys. The motion is brought pursuant to 42 U.S.C. § 1988, Sec. 2, The Civil Rights Attorney's Fees Awards Act of 1976.

Defendants, through their respective attorneys, the Hennepin County Attorney and the Minnesota Attorney General, oppose the motion on the grounds that plaintiff was not a "prevailing party" for purposes of the statute and that, assuming *arguendo* plaintiff is a "prevailing party," the statute should not be applied retroactively in this case since the statute was enacted several months after this suit was settled.

This case has had a long and involved history. The facts leading to the commencement of this action and the history of this litigation are not in dispute. *See Hartmann v. Scott*, 488 F.2d 1215, 1216–1217 (8th Cir. 1973).

However, pursuant to the remand order of the Eighth Circuit in *Hartmann v. Scott, supra,* the parties entered into lengthy settlement negotiations which did not conclude until early 1976. On April 9, 1976, the parties concluded the signing of a settlement agreement which, *inter alia,* required plaintiff to dismiss his action in all respects save that of attorneys' fees and required the State defendants to maintain plaintiff's present level of hospital privileges until there is a change in plaintiff's physical or mental condition or behavior to warrant a change. The question of attorneys' fees, expressly reserved from the settlement agreement, is now the sole issue remaining in this case.

For the reasons set forth below, this Court believes 42 U.S.C. § 1988, Sec. 2, as amended, should be applied in this instance and that plaintiff is a "prevailing party" for purposes of an award of attorneys' fees.

Defendants' contention that § 1988 should not be applied retroactively is simply without merit. That issue was expressly reserved from the terms of the settlement. The agreement was not filed until January 31, 1977, and, although it calls for a dismissal by plaintiff, no dismissal has been sought or ordered to date. The agreement itself is not self-executing but instead requires the plaintiff to take the necessary steps to dismiss the suit. Because plaintiff has not moved for dismissal, this case is still pending, and by the terms of the settlement, it probably will not be subject to dismissal until resolution of the attorneys' fees question.

Furthermore, amended § 1988, Sec. 2 was enacted into law on October 19, 1976. Plaintiff's present motion was not heard until April 7, 1977. Either of these dates clearly postdates the effective date of § 1988, which provides the Court may, in its discretion, allow the prevailing party a reasonable attorney's fee as part of the costs of litigation. The general rule is that a court is to apply the law in effect at the time it renders its decision, unless to do so would result in manifest injustice or there is statutory direction or legislative history to the contrary. *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). The Eighth Circuit has already recognized that Congress intended § 1988 to apply to cases pending resolution on appeal and the legislative history appears to contemplate application of amended § 1988 to all cases pending on the date of its enactment. *Finney v. Hutto,* 548 F.2d 740, 742 n. 5 (8th Cir. 1977). This case was pending on the effective date of the amendment to § 1988, and therefore, an award under this section would be appropriate upon a finding that plaintiff is a "prevailing party." It should also be noted that plaintiff's attorneys had a reasonable expectation of compensation because amended § 1988 is a legislative codification of the "private attorneys general" concept which existed as a basis for awarding fees at the time this action commenced and has been judicially eliminated only recently. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

■ Defendants contend that plaintiff cannot be viewed as a "prevailing party" under the statute because he did not achieve success on any of the claims he made. Although it is true that plaintiff did not ultimately prevail in terms of the relief he demanded, there is sufficient evidence on the record and in the history of the extensive proceedings before this Court and the Court of Appeals to find that plaintiff prevailed to the extent of maintaining his claims before this Court after they were originally dismissed here. *Hartmann v. Scott*, 488 F.2d 1215, 1222–1223 (8th Cir. 1973). This Court also finds that by prevailing to the extent he did before the Court of Appeals, plaintiff's claims were an effective catalyst in bringing about the settlement. *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421, 429 (8th Cir. 1970). The Court believes this conclusion is warranted where, as here, litigation and settlement negotiations have spanned a period of over six years and have involved substantial questions of federal constitutional law. To now disallow attorneys' fees merely because the terms of the settlement did not satisfy plaintiff's claims would deny the value of the settlement to both plaintiff and defendants. The Court is satisfied that defendants were primarily interested in obtaining a settlement in order to avoid litigating the serious constitutional claims presented.

Moreover, such a conclusion squares with the legislative policy statement contained in Senate Report No. 94–1011, which states:

All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy *if private citizens are to have a meaningful opportunity* to vindicate the important Congressional policies which these laws contain. [emphasis added]. S.Rep. No.94–1011, 94th Cong., 2d Sess. 5, U.S. Code Cong. & Admin.News 1976, pp. 5908, 5910.

In procuring the services of two qualified and experienced attorneys who had a reasonable expectation of compensation, plaintiff was provided a "meaningful opportunity" to vindicate his claims. Over the course of six years, the complexion of this case has changed and apparently so have plaintiff's objectives. Plaintiff's attorneys sought to represent their client's best interests, and, as a result, settled this case. To require plaintiff to continue this action and succeed on one of his claims so he would be a "prevailing party", as defendants now maintain is the only way plaintiff could recover fees, would be an extravagant waste of judicial resources and contrary to the best interests of both parties. To deny attorneys' fees in a case such as this would discourage settlements in civil rights cases and therefore would be contrary to the strong public policy encouraging settlements. Moreover, a denial of fees here would detrimentally affect the ability of future litigants of plaintiff's status to secure the services of qualified counsel. Such a result would be absolutely contrary to the legislative intent expressed above.

■ However, even if fees are to be awarded as costs, the Court must now determine the reasonable value of the legal services and apportion those costs among the remaining defendants. The applicable standards for determining the actual amount of the award are set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and have been adopted by this Circuit in *Finney v. Hutto*, 548 F.2d 740, 742 (8th Cir. 1977). In making this award, the Court's intent is to assure fair and reasonable compensation to plaintiff's attorneys as well as to encourage similar service from public spirited advocates in the future.

■ In support of plaintiff's motion for attorneys' fees, his counsel have submitted various papers to the Court, including an affidavit and legal memorandum in support of their motion for attorneys' fees. The affidavit included an itemized expense account and a description of the legal services rendered together with an hourly breakdown of time spent by each of the two attorneys. The affidavit indicates that a total of 459.2 hours have been spent on behalf of plaintiff and that total expenses

amounted to $1,638.81 for the years 1971–75. Most of the expenses, $1,048.83, accrued during the course of the appeal to the Eighth Circuit in 1973. The attorneys calculated their proposed fee by ascribing $75.00 per hour as a reasonable value for their services and then multiplied the total number of hours each spent by their hourly rate. The product of that multiplication is $34,440.00. Added to the $1,638.81 out-of-pocket costs, they seek a total of $36,078.81.

There is no doubt that both plaintiff's attorneys enjoy a fine reputation generally and this Court is well aware of their collective expertise in this particular type of litigation. Mr. Castner served as staff legal counsel for the Minnesota Civil Liberties Union from 1964 through 1970, and has served as Volunteer President of that organization and as a member of its Board of Directors since 1970. He has also taught civil rights litigation at the William Mitchell College of Law for two years. Mr. Stephenson has been in the practice of law since 1948 and has also served as a member of the Minnesota Civil Liberties Union. From 1974 through the academic year of 1976, he taught a course in the Graduate School at the University of Minnesota pertaining to the rights of the mentally ill.

However, in light of the criteria established in *Johnson v. Georgia Highway Express, Inc., supra*, this Court finds that the amount claimed is unreasonable and excessive for the following reasons.

Although substantial effort appears to have been expended on Plaintiff's behalf, much of the time charged appears to be unnecessary duplication or work done in contemplation of a settlement which did not satisfy plaintiff's claims for relief. Furthermore, while these attorneys are experienced, qualified and capable, a fee based upon $75.00 per hour is not warranted in cases such as this where many attorneys work for a nominal fee, if one is paid at all. Furthermore, the average prevailing fee in this community more closely approximates $60.00 per hour than $75.00 per hour.

The Court, however, will allow attorneys' fees computed at a rate of $60.00 per hour on a total of 254.2 hours. The figure for total hours is based upon disallowing those hours which represented an exact duplication of time and those hours where overlap of time occurred. Where overlap occurred, the Court has disallowed the lesser number of hours claimed as being indicative of unnecessary duplication. Further, the Court has disallowed all hours spent from January, 1974 through May, 1976 as work done outside of this Court's determination of when plaintiff became a "prevailing party" for purposes of this award. Thus, the total number of disallowed hours equals 205.

■ On the basis of the foregoing, this Court will allow $15,252.00 as reasonable attorneys' fees and $1,638.81 for out-of-pocket expenses for a total of $16,890.81 as costs pursuant to 42 U.S.C. § 1988, Sec. 2, as amended. In the alternative, this Court believes that this award, as now structured, would be justified as fees awarded pendente lite. Senate Report No. 94–1011 also states:

In appropriate circumstances, counsel fees under S.2278 may be awarded pendente lite. See *Bradley v. School Board of the City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Such awards are especially appropriate where a party has prevailed on an important matter in the course of litigation, even when he ultimately does not prevail on all issues. S.Rep.No.94–1011, 94th Cong., 2d Sess. 5, U.S.Code Cong. & Admin.News 1976, *supra*, at 5912.

The circumstances of this case certainly would make such a pendente lite award reasonable. This Court has made its award on the basis of the successful work done on plaintiff's behalf and, although the case is now subject to dismissal pursuant to the terms of the settlement filed January 31, 1977, the case is still pending. Therefore, the award may be viewed as an interim allowance, even though plaintiff will, in all probability, not be entitled to additional fees if the case is dismissed in accordance with the settlement agreement.

Next the Court must turn to the question of who is liable for the payment of this award. Defendant Gaffney, represented by

the Hennepin County Attorney's Office and as a party to this suit in his capacity as an Assistant Hennepin County Attorney, maintains that he is immune from suit under 42 U.S.C. § 1983 under the doctrine of prosecutorial immunity as announced by the United States Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The *Imbler* doctrine, however, only grants immunity to a prosecutor from a civil suit under § 1983 when he initiates a prosecution and presents the State's case. The Supreme Court specifically declined to decide whether "like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Imbler v. Pachtman, supra* at 430–431, 96 S.Ct. at 995.

In this case, defendant Gaffney was sued for actions taken outside of an actual prosecution. Furthermore, this award is not based on the merits of plaintiff's claims but on his success at maintaining his claims to the extent he did before the Court of Appeals and, by so doing, bringing about a settlement which was not only in his best interests, but also in the public interest. Finally, because this case is now subject to a settlement agreement which calls for dismissal of all claims against defendants, the issue of prosecutorial immunity is not properly before the Court at this time.

■ The Court has asked each of the real parties in interest, the State of Minnesota and Hennepin County, to argue the issue of their respective liability. Both have responded in length. Plaintiff's counsel also have submitted a detailed response indicating their view that the State and the County should be jointly liable. After reviewing the briefs, the Court is of the opinion that both the State and the County should share the costs of fees equally.

The State is a necessary and proper party to this suit because plaintiff challenged the constitutionality of the Interstate Compact on Mental Health. The State, of course, defended this attack before this Court and the Court of Appeals. The State is also interested by virtue of its position in at-tempting to hold plaintiff at the Minnesota Security Hospital. Hennepin County is a party properly liable because defendant Gaffney represented it as an Assistant County Attorney at the Colorado proceedings which resulted in plaintiff's return to Minnesota. Moreover, defendant Gaffney acted on behalf of Hennepin County at the Colorado proceedings pursuant to an order of the Hennepin County Probate Court.

Accordingly, the Court finds that both the State of Minnesota and Hennepin County are equally liable. Therefore, each of these governments are hereby directed to pay one-half of the total amount of the award, or $8,445.40, directly to plaintiff's attorneys. *See, Finney v. Hutto, supra*, at 742.

IT IS SO ORDERED.