Samuel DREW, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

David H. BRIERTON, Individually and as Warden of the Stateville Branch of the Illinois State Penitentiary, Robert J. Kapture, Individually and as Assistant Warden of the Illinois State Penitentiary, M. B. Hall, Individually and as Chief Guard, Stateville Branch of the Illinois State Penitentiary, Lieutenant Fleming, Individually and as Lieutenant of cell house B, Stateville Branch of the Illinois State Penitentiary, Officer Buffington, Individually and as a correctional officer in cell house B, Stateville Branch of the Illinois State Penitentiary, and Officer McNeal, Individually and as a correctional officer in cell house B, Stateville Branch of the Illinois State Penitentiary, Defendants.

No. 73 C 2911.

United States District Court,
N. D. Illinois, E. D.

Jan. 16, 1978.

Martha M. Jenkins, Chicago, Ill., for plaintiffs.

William J. Scott, Atty. Gen., and Raymond McKoski, Asst. Atty. Gen., Chicago, Ill., for defendants.

MEMORANDUM DECISION

MARSHALL, District Judge.

Plaintiff Samuel Drew is a resident of the Illinois Correctional Institution at Stateville, Illinois. He commenced this action *pro se* alleging violations of his Fourth Amendment rights and 42 U.S.C. § 1983. Jurisdiction is here under 28 U.S.C. § 1343. We appointed Ms. Martha M. Jenkins of the Chicago bar to represent Drew. An amended complaint was filed in which plaintiff sought relief for a class of all residents and former residents at Stateville who have been subjected, continue to be subjected or may be subjected in the future to searches of their cells by officers, employees or agents of the Illinois Department of Corrections in violation of their Fourth Amendment rights.

After extensive pre-trial preparation and negotiation the action was settled by the entry of a consent decree on April 22, 1977 in which defendants and their successors were enjoined to observe and enforce the rights of residents under the Fourth Amendment, to observe and strictly enforce the provisions of Administrative Regulation

401 of the Department of Corrections and to provide each resident whose cell is searched, the identity of each officer participating in the search and a list of any items seized as a result of the search. The consent decree also required that it be conspicuously posted at Stateville.

Ms. Jenkins has now petitioned for an award of attorneys' fees. Defendants do not challenge our authority to make such an award under the Civil Rights Attorney's Fees Awards Act of 1976, P.L. 94–559. *Bond v. Stanton,* 555 F.2d 172 (7th Cir. 1977); *Finney v. Hutto,* 548 F.2d 740 (8th Cir. 1977). Rather defendants assert the plaintiff class was not a prevailing party under the Attorney's Fees Act; the relief obtained was de minimus; in our discretion we should not divert funds needed for prison rehabilitation to the award of attorneys' fees; and in any event Ms. Jenkins should not be compensated at the rate she requests ($75 per hour) nor should she be compensated for the time she devoted to the matter while she was associated in the practice with the firm of Schiff Hardin & Waite.

We find that the plaintiff class was a prevailing party. True the consent decree did not find nor did defendants concede the constitutional violations alleged by plaintiff. But it is undisputed that a controversy existed over how cells of residents can be searched consistent with the Fourth Amendment and the Department of Corrections Administrative Regulation 401. Plaintiff sought a decree that a resident must be present when his cell is searched. In settlement negotiations which were conducted in our presence, it emerged that that request was impracticable in certain situations. Emergencies arise which must be dealt with immediately. Considerations of safety for staff and residents may dictate the search of a cell in the absence of its resident.

However the practice and procedure which obtained prior to the entry of the consent decree did not give a resident any notice that his cell had been searched unless contraband was seized. Nor was he advised of the identity of the staff who searched

the cell. Thus a resident who believed himself the victim of an unreasonable search and perhaps the seizure and confiscation of non-contraband had no sure way of ascertaining when the search occurred or what staff members had been participants in it. In these circumstances he was virtually helpless to seek any relief from an unlawful search.

These shortcomings in defendants' practice and procedure were remedied by the decree. Detailed post-search notice is now required. The resident will now know the time of any search of his cell and the persons against whom he should complain if he is of the belief that the search or its consequences were unlawful.

We find that this consented-to relief is substantial. Furthermore we infer from the absence of any objections to the consent decree by members of the plaintiff class that the residents of Stateville regard the decree as providing them with substantial relief. Accordingly, we find that the plaintiff class was a prevailing party.

Nor can the relief obtained be characterized as de minimus. Defendants now suggest that the new notice practice imposed by the decree was in existence prior to the decree. But those facts were not disclosed in settlement negotiations conducted in our presence and in our chambers. All that existed prior to the decree was notice of seizure. Notice of search qua search was not served upon the resident, nor was he advised as to the participants of the search. The post-search notice described by the decree was a reasonable substitute for resident presence at all searches. While the remedy was a simple one, it was not a minimal advance in the preservation of those Fourth Amendment rights which residents of correctional institutions enjoy. It was a substantial step toward the preservation of those rights.

We know from our handling of this case and other cases pending before us dealing with the conditions at the Stateville Correctional Facility that the Illinois Department of Corrections has substantial budgetary problems. We also recognize that residents

of correctional institutions initiate many civil rights actions against the administrators of those institutions complaining of alleged violations of constitutional rights. Some of those actions are frivolous. Others, such as this one, appear to be meritorious. While the benefits conferred by the Civil Rights Attorney's Fees Awards Act of 1976 should not be a windfall for the bar, neither should the bar be expected to prosecute an action which results in substantial relief for the plaintiff class without compensation merely because defendants such as those in the case at bar have budgetary problems and are faced with large numbers of frivolous actions. In the circumstances of this case, just as in any other case where attorney's fees are an appropriate portion of the remedy granted, each case should turn on its own merits and awards should be made which are fair and equitable under all of the circumstances.

Ms. Jenkins is a lawyer of extraordinary ability. She has had extensive experience in all types of litigation including civil rights litigation. Today she is engaged in the individual private practice. However, during a portion of her representation of the plaintiff class she was associated with the Chicago firm of Schiff Hardin & Waite. It is our understanding from other civil rights litigation which we have heard in which members or associates of that firm represented prevailing parties that the firm does not seek or accept awards of attorney's fees in cases of this type. Accordingly, as defendants urge we have excluded from our consideration the 137.25 hours which Ms. Jenkins devoted to this action while she was associated with Schiff Hardin & Waite.

The materials which she has presented in support of her fee petition demonstrate that she worked assiduously on this matter. She took six depositions. She interviewed over sixty residents and staff members at Stateville. She conducted a survey by mail of the departments of corrections of all fifty states to ascertain how they handled cell searches. That mail survey was followed up by extensive telephone interviews with supervisory personnel of many of those departments of corrections. She submitted briefs of high quality in behalf of her clients. She readied the case for trial and put herself and her clients in the strongest possible position for negotiation of a settlement. Had the case not been settled, she was ready to proceed to an adversary trial which would have been lengthy and complex.

Her detailed time records throughout her engagement show that she has devoted only 242.5 hours of time to this case. Of that 137.25 hours occurred while she was with Schiff Hardin & Waite. The remaining 105.25 have been devoted since she entered the individual private practice. We think this time expenditure to be exceptionally reasonable. It demonstrates an exceptionally efficient utilization of time.

Ms. Jenkins asks for an award at the rate of $75 per hour which she represents to be her current charging rate. That is a reasonable rate for a lawyer of her outstanding background and experience. Its reasonableness is enhanced in our judgment by the modest amount of time which she has reported in respect to this engagement.

Accordingly, we have concluded that Ms. Jenkins is entitled to be compensated at her regular hourly rate of $75 per hour for the 105.25 hours of time which she has devoted to this engagement since entering the individual private practice. In addition, she is entitled to recover her out-of-pocket expenses totalling $183.21 which she has itemized. In respect to the latter item, we note that certain of those expenses were incurred while she was associated with Schiff Hardin & Waite. We would expect that she would reimburse that firm for those expenses.

Accordingly, it is ordered and adjudged that Martha M. Jenkins, attorney for plaintiff Samuel Drew and the plaintiff class, have and recover from defendants attorney's fees in the amount of $7,900.00 and out-of-pocket expenses in the amount of $183.21, for a total of $8,083.21.