Charles Leroy ALSAGER, Sr., and Darlene Lavern Alsager, Plaintiffs,

v.

DISTRICT COURT OF POLK COUNTY, IOWA (JUVENILE DIVISION), Hon. Don L. Tidrick, Judge of Polk County Juvenile Court, Michael H. Doyle, Jr., Clerk of the Polk County Juvenile Court, Carl Parks, Director, Polk County Juvenile Court, Defendants and Third-Party Plaintiffs,

v.

STATE OF IOWA, Third-Party Defendant.

Civ. No. 73–79–2.

United States District Court, S. D. Iowa, C. D.

Dec. 14, 1977.

**574**

Gordon E. Allen, Iowa Civil Liberties Union, Des Moines, Iowa, Rena K. Uviller, Burt Neuborne, Melvin L. Wulf, Juvenile Rights Project, American Civil Liberties Union, New York City, for plaintiffs.

Dan L. Johnston, Polk Co. Atty., Des Moines, Iowa, and E. LaVon French, Asst. Polk Co. Atty., Harold A. Young, Ray Sullins, Asst. Attys. Gen., State of Iowa, Des Moines, Iowa, for defendant District Court of Iowa.

Richard C. Turner, Atty. Gen., State of Iowa, for District Court of Iowa and State of Iowa.

Stephen C. Robinson, Sp. Asst. Atty. Gen., Theodore R. Boecker, Fred M. Haskins, Asst. Attys. Gen., Des Moines, Iowa, for third party defendant State of Iowa.

## ORDER

HANSON, District Judge.

The Court has before it motions arising out of the May 11, 1977 ruling that, pursuant to the provisions of 42 U.S.C. § 1988, plaintiffs' counsel are entitled to attorney fees for their successful constitutional attack upon the County's parental termination proceedings against the Alsagers. Specifically, three motions have been filed, briefed, and argued before the Court: (1) defendant District Court of Polk County's motion of June 3, 1977 to implead the State of Iowa as third-party defendant; (2) defendant County's further motion of June 10, 1977 to reconsider the Court's Order allowing attorney fees; and (3) third-party defendant State of Iowa's motion of September 13, 1977 to dismiss the third-party complaint. Since disposition of said motions is predicated upon this Court's authority to rule in these post-trial and post-appeal matters, the question of jurisdiction to proceed under Section 1988 must first be considered.

### I. JURISDICTION

■ Without question, 42 U.S.C. § 1988, which codifies the Civil Rights Attorney's Fees Award Act of 1976, is applicable to the instant action and entitles plaintiffs' counsel to attorney fees. This statute, notwithstanding the County's argument to the contrary, has been found to apply retroactively to those actions which, as this case, were pending on appeal at the time of its enactment. *Wharton v. Knefel*, 562 F.2d 550 (8th Cir. 1977). The only possible question with respect to entitlement to attorney fees is whether this Court, subsequent to an appeal and affirmance by the Eighth Circuit Court of Appeals, still retains jurisdiction to award such fees. The application for attorney fees was made in this Court after the Circuit Court's ruling but before defendant's appeal time to the United States Supreme Court had expired.

■ Having reviewed the status of the record, this Court has determined that "ancillary jurisdiction" permits it to grant an

award of attorney fees to plaintiffs' counsel. Ancillary jurisdiction vests a federal district court with the power to take affirmative action to effectuate its prior judgments. In this case, the Court believes that the exercise of such jurisdiction is fully warranted, especially since its exercise neither involves new fact finding nor deprives any party of substantial procedural or substantive rights. *Dillon v. Berg*, 347 F.Supp. 517 (D.Del.1972); Wright, *Law of Federal Courts*, § 9 (1976).

The Court finds no merit in the State's argument that the Eighth Circuit's mandate would be amended or modified by an award of attorney fees at this stage of the proceeding. *Cooper Agency v. United States*, 327 F.Supp. 948 (D.S.C.1971); *Davis Harvester Co. v. Long Mfg. Co.*, 283 F.Supp. 536 (E.D.N.C.1967). In the recent case of *Mayard v. Wooley*, Civ. No. 75–57 (1977), the United States District Court for the District of New Hampshire exercised similar ancillary jurisdiction to award substantial attorney fees after the United States Supreme Court had affirmed the district court's original decision.

Thus, pursuant to Section 1988 and by way of ancillary jurisdiction, this Court reaffirms its prior ruling that plaintiffs' counsel are entitled to attorney fees. Remaining, however, are the questions of who pays and the sum to be paid. These are the questions to which the Court presently turns its attention.

## II. THIRD–PARTY ACTION

■ Defendant Polk County, pursuant to Rule 14(a) of the Federal Rules of Civil Procedure, requested that the State of Iowa be made a third-party defendant to this ancillary action. The underlying basis for its third-party action is that the County, as an agent of the State, should not be held solely responsible for the enforcement of legislation found later to be unconstitutional. The Court, so as to bring this issue before it in oral argument, ordered that the County's third-party complaint be filed. The State thereafter resisted with a motion to dismiss.

Despite arguments to the contrary, the Court believes that the State not only can be properly impleaded pursuant to Rule 14, but that it also has no general immunity from a civil rights action for attorney fees. *Williams v. United States*, 42 F.R.D. 609 (S.D.N.Y.1967); *Lee v. Brooks*, 315 F.Supp. 729 (D.Hawaii 1970); *Finney v. Hutto*, 548 F.2d 740, 742 (8th Cir. 1976), *cert. granted*, 434 U.S. 901, 98 S.Ct. 295, 54 L.Ed.2d 187 (1977).[1] However, the Court, for other substantive and procedural reasons, finds that the State's motion to dismiss the County's third-party action must be sustained.

While Rule 14 procedure may be utilized to implead the State, the defendant County must predicate the action upon a substantive right which permits it as a county to make claims against the State. Those substantive grounds have never been made clear, but apparently the County seeks to implead the State on the theory that its lawmakers, having promulgated an unconstitutional parental termination statute, were joint tortfeasors under 42 U.S.C. § 1983.[2] Such a theory, regardless of whether or not the State is immune from the County's claim for contribution, cannot succeed. Its very basis—that the County was not responsible for the unconstitutional statute which it enforced—is faulty. A review of the case reveals that the Circuit Court upheld this Court's ruling solely on the grounds that the parental termination

---

1. Courts have disagreed as to a State's immunity in such an action, and the question is presently before the United States Supreme Court. There is little question, though, that a county and county officials do not enjoy immunity. *See, e. g., Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Griffin v. County School Board*, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964).

2. Section 1983 provides in part:
   Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

statute was unconstitutionally *applied* in the Alsagers' situation. The Circuit specifically refused to find the statute to be unconstitutional on its face, holding this Court's ruling to that extent was without effect. *Alsager v. District Court*, 406 F.Supp. 10 (S.D.Iowa 1975), *aff'd in part*, 545 F.2d 1137 (8th Cir. 1976). Consequently, this Court, in light of that ruling, would be encroaching upon the Circuit's mandate if it were now to find the State jointly liable on a theory that it was responsible for an unconstitutional statute. Only the application of that statute, an application made by defendant County officials alone, has been found unconstitutional.

There is a further reason for dismissing the defendant County's third-party action. Clearly it is discretionary with the Court to permit third-party actions, and the Court, in fairness to the State, cannot allow such an action at this post-judgment stage of the proceeding.

The delay in impleading the State, which could have been done when this case was filed some four years ago, is so great as to be prejudicial. Unlike any case cited to this Court, the State is now being asked to contribute attorney fees in a lawsuit to which neither it nor its officials were parties of record. *See Finney, supra*; *Rainey v. Jackson State College*, 551 F.2d 672 (5th Cir. 1977). The State did not have input throughout the proceedings, and the Court believes to tax it now for the results would be unfair. Moreover, the Court finds that to permit a third-party action would complicate the case to the detriment of plaintiffs' counsel. The law as to whether the County can sue the State under Chapter 25A of the Iowa Code (State Tort Claims Act) is unclear, and any ruling to this effect would undoubtedly generate time-consuming appeals unrelated to plaintiffs' claims. Since such a ruling would affect substantive and procedural rights of the parties, it would also be a suspect exercise of ancillary jurisdiction.

Delay and prejudice, therefore, further necessitate the dismissal of the third-party action. *Fraley v. Worthington*, 64 F.R.D.

726 (D.C.Wyo.1974); 3 *Moore's Federal Practice*, § 14.05[2].

## III. ATTORNEY FEES AND COSTS

As heretofore noted, the Civil Rights Attorney's Fees Award Act of 1976 became law while this case was on appeal to the Eighth Circuit Court of Appeals. Section 1988 of Title 42 to the United States Code, pursuant to said Act, now provides in pertinent part:

> . . . In any section or proceeding to enforce a provision of Sections 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

After the May 11, 1977 ruling that plaintiffs' counsel were "entitled" to attorney fees, the parties, at the Court's further direction, attempted to negotiate a settlement as to the amount of fees that should be paid. When it became apparent that no settlement was forthcoming, the Court scheduled a hearing on the matter of attorney fees for October 7, 1977.

Plaintiffs' counsel offered evidence at the hearing in support of requested fees, with costs included, of between $110,000.00 and $125,000.00. Having not previously anticipated attorney fees for proceedings before this Court, counsel largely had to reconstruct from memory, prompted by a review of the files, the time expended on the various stages of this lawsuit. Their testimony revealed, as a "conservative" estimate, that the three attorneys had spent the following number of hours in preparation and litigation of this case: Attorney Uviller, 418 hours, Attorney Neuborne, 385 hours; and Attorney Allen, 748 hours.

Testimony further disclosed that Attorneys Uviller and Allen had been paid a salary by the American Civil Liberties Union (ACLU) throughout this lawsuit. Ms. Uviller's annual salary ranged from $20,000.00 in 1973 to $25,000.00 in 1977; and the salary of Mr. Allen, who was local counsel for the ACLU, ranged from $5,000.00 in 1972 to $8,000.00 in 1977.

Mr. Neuborne, who was employed with the ACLU until 1974, declined to disclose his salary for personal reasons, though the parties agreed that his salary in 1973 was between $20,000 and $25,000. Since 1974, Neuborne has been a professor of law at New York University. He has, though, continued to work on cases for the ACLU without charging a fee. Less than half of the total hours he spent on the Alsager case came after leaving the ACLU to become a professor of law.

Plaintiffs' counsel derived their fee portion of the $110,000.00 to $125,000.00 requested by multiplying the number of hours expended on the case with a set hourly rate. Ms. Uviller, at $75.00 per hour, requested a fee of $28,000.00; Mr. Neuborne, at $100.00 per hour, requested a fee of $38,000.00; and Mr. Allen, asking for no less than $25.00 per hour, requested a fee of $15,000.00. The $30,000.00 to $40,000.00 amount requested in addition to the $81,000.00 fee award constitutes their request for an incentive award and costs.

■ The Court, having thoroughly considered parties' arguments, the caselaw offered in support of those arguments, and the legislative history underlying Section 1988, finds itself at odds with the method utilized by plaintiffs' counsel for determining the amount of fees that defendant, as the losing party, must pay as part of the costs. The purpose of the statute was to give impoverished victims of civil rights violations "effective access to the judicial process where their grievances can be resolved according to law." H.R. Report, No. 94–1558, 94th Cong., 2d Sess. (September 15, 1976), at 1; see Sen. Rep., No. 94–1011, 94th Cong., 2d Sess. (June 20, 1976), at 2–4, U.S.Code Cong. & Admin.News 1976, p. 5908. An award of attorney fees to the prevailing party as part of costs was designed to encourage private attorneys, who generally would not otherwise become involved in such cases, to represent indigent plaintiffs with legitimate civil rights claims. If it should happen that an attorney representing an indigent civil rights claimant is salaried by a public interest group, this in itself should not affect entitlement to attorney fees. Note, *Awards of Attorney Fees to Legal Aid Offices*, 87 Harv.L.Rev. 411 (1973). That is, no charge to the claimant is ever grounds for denying an award of attorney fees to the public interest group. *Brandenburger v. Thompson*, 494 F.2d 885 (9th Cir. 1974). But, in this Court's opinion, the fact that an attorney is salaried does affect the method in determining the amount of fees to be awarded.

■ Nothing in the Fee Award Act, its legislative history, or relevant caselaw indicates that the purpose of the statute was other than *reimbursement* for costs and time spent. Full recompense for the value of services rendered was thought by Congress to assure the continuing availability of those services. Therefore, it is the belief of this Court that the fees paid to the ACLU attorneys in this case should be keyed to their annual salaries and the time expended working on Alsagers' case.

In setting the fees for plaintiffs' counsel, the Court, in view of their testimony that the hours were conservatively calculated, has compensated by basing its estimation upon the most recent salary paid to the attorneys during the relevant time period. Also, in determining approximately what portion of a year was spent in this case alone, the Court has conservatively estimated 1600 billable hours in a year.

The Court, on these estimations, has determined reasonable reimbursement to the plaintiffs' counsel in the following manner and amounts:

| | | |
|---|---|---|
| Ms. Uviller: | ¼ year (418 hours) × $25,000 = | $ 6,250.00 |
| Mr. Allen: | ½ year (748 hours) × $ 8,000 = | 4,000.00 |
| Mr. Neuborne: | ⅛ year (200 hours) × $25,000 = | 3,125.00 |
| | Total | $13,375.00 |

Mr. Neuborne, who later donated services for which he was not paid a salary, must also be compensated for the approximately 180 hours spent subsequent to his employment with the ACLU. *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 517 F.2d 1141 (4th Cir. 1975). For reasons which will hereafter be discussed, the Court believes the value of these services should be reduced to 90 hours at $35.00 per hour. Thus,

the total attorney fees to be paid by the defendant County are as follows:

| | | |
|---|---|---|
| Ms. Uviller: | ¼ year (418 hours) × $25,000 = | $ 6,250.00 |
| Mr. Allen: | ½ year (748 hours) × $ 8,000 = | 4,000.00 |
| Mr. Neuborne: | ⅛ year (200 hours) × $25,000 = | 3,125.00 |
| | 90 hours × $35.00 = | 3,150.00 |
| | Total fees: | $16,525.00 |

The Court, through no extraordinary insight, anticipates that plaintiffs' counsel would vigorously protest that the preceding method for setting fees is contrary to all precedent. Yet, the Court, having studied the many cases cited to it by counsel, finds no conflict between what this Court and other courts have done in awarding attorney fees. Plaintiffs' counsel, who have furthered the interests of a significant class of people and strong congressional policy, are indeed entitled to a fee under the "private attorney general" doctrine. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). The Court also agrees, and has so indicated, that attorney fees may not be withheld because the prevailing party's attorney was employed by a civil rights organization exacting no fee. *Torres v. Sachs*, 538 F.2d 10 (2nd Cir. 1976). Fees have been awarded here which will encourage the ACLU to continue trying cases for indigents deprived of their constitutional rights. The ACLU has been compensated in full for the money expended on attorneys in this case, and, having money that would not otherwise be reimbursed, it can now bring other such similar actions. *Rodriguez v. Taylor*, 428 F.Supp. 1118 (E.D.Pa. 1976).

It might be argued that plaintiffs' counsel should be paid that which a private attorney could have charged and received, pursuant to Section 1988, for this case. If paid significantly less, plaintiffs' counsel might contend that their ability to induce settlement for plaintiffs through the leverage of fees would be unfairly diminished. 87 Harv.L.Rev., *supra*. The Court has con-

sidered this argument and finds it must fail, for the fees that would have been paid private counsel in this case would not have been significantly different. To illustrate this point, the Court has computed the fees that would have been awarded had plaintiffs' counsel not been salaried attorneys for the ACLU.

When attorneys are privately retained by indigent clients, fees under Section 1988 should be set pursuant to the method that plaintiffs' counsel have unsuccessfully urged in the instant action. *Lindy Bros. Builders, Inc. v. American Radiator*, 540 F.2d 102 (3rd Cir. 1976); *Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir. 1975); *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2nd Cir. 1974); *Lockheed Minority Solidarity Coalition v. Lockheed Missiles*, 406 F.Supp. 828 (N.D. Cal.1976). First, the number of hours spent on the case is determined; then a reasonable hourly rate is established; and finally the market value of the services rendered is tailored to the particular case by consideration of such other intangible factors as risk, success, and incentive awards. *See Finney, supra.*

In setting the time factor for this case, the Court would reduce considerably the number of attorney hours.[3] It is the judgment of this Court, having presided over these proceedings from their inception, that plaintiffs' counsel have failed their burden of showing that this reduction of hours is not fully justified on the grounds of duplication of effort, surplus work, and nonchargeable time. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The Court is firmly of the belief that the utilization in this case of three attorneys with the abilities displayed by each one of them was totally unnecessary and unavoidably resulted in an overlap of research and time. Moreover, while Neu-

---

**3.** Reducing the number of hours is not inconsistent with the Court's liberal acceptance of those hours in its prior computation of fees. The Court, when setting fees based upon salary, is not concerned with how those hours were spent or whether they were productively spent. The ACLU has already determined the market value of those hours and pays for them regardless. When determining fees for non-salaried private attorneys, however, it is incumbent upon the Court—as opposed to a public interest group—to control the number of hours spent by evaluating and determining their worth. *See Lindy, supra.*

borne undoubtedly confronted procedural complexities when determining the manner by which to bring this action, such endeavors, from which Neuborne has gained beneficial experience, did not for the most part contribute to the final result and cannot be charged to the defendant. Nor, for the same reasons, should the defendant be charged with the excessive hours that Mr. Allen admittedly spent "hand holding" as local counsel. *See Maynard, supra*; *Manual for Complex Litigation*, § 1.47, at 72 (1977).

With regard to hourly pay, the Court has heretofore indicated that $35.00 an hour was fair for Neuborne. So too with Ms. Uviller. For Allen, who acted as local counsel and a liaison between counsel and plaintiffs, the Court finds $20.00 an hour sufficient. The Court bases these rates on the Iowa market. *Johnson, supra*. It would further note, in justification of these rates, that the average of such rates exceeds those offered for appointments in criminal cases, which pay $20.00 an hour for out-of-court time and $30.00 an hour for in-court appearances.

Thus, if plaintiffs' counsel were not salaried attorneys, the Court would take duplication of effort and nonproductivity into account and pay fees in the following amounts:

| | | |
|---|---|---|
| Ms. Uviller: | 200 hours × $35/hour = | $ 7,000.00 |
| Mr. Neuborne: | 150 hours × $35/hour = | $ 5,250.00 |
| Mr. Allen: | 375 hours × $20/hour = | $ 7,500.00 |
| | Total fees: | $19,750.00 |

As for the intangible factors to be considered, the Court would find that in this case they neither increase nor decrease the total fee award. *See Finney, supra*; *Johnson, supra*. Preliminarily, the Court would observe that plaintiffs' counsel have shown themselves to be highly competent and of assistance to the Court. However, while skill was required to resolve the novel questions that arose during the action it has admittedly been the Court that has recognized and assisted in resolving many of them. The success achieved in this case for party litigants has been considerably less than complete. The legislature may have amended state statutes in part because of

the rulings in this case, but the Alsagers, who presently stand in a position no different from which this Court was willing to leave them in the first instance, have still ultimately lost their children to foster homes. *Alsager v. District Court*, 384 F.Supp. 643 (S.D.Iowa 1974), *rev'd*, 518 F.2d 1160 (8th Cir. 1975). In view of the constitutional victory, the award of fees herein suggested would not be out of line with awards made in similar cases. *See, e. g., Maynard, supra.*

Under no circumstances would the Court, as courts have in other actions, apply an "incentive multiplier" in this case. If plaintiffs' counsel had been privately retained and paid pursuant to Section 1988, the Court finds that the award would have been substantial enough to encourage other attorneys to bring similar actions. As for the ACLU, it had been "made whole" by the fee award, admittedly gained the publicity it sought for its program, and certainly was in need of no further incentive to bring such civil rights actions.

The Court cannot deny, therefore, that there is a difference, though not great, between what plaintiffs' counsel would have been awarded in fees as private attorneys and what they will be awarded as salaried attorneys. The difference flows from this Court's belief that Section 1988 is based upon reimbursement for services rendered, and that fees for salary paid is in this case a fair, reasonable, and adequate award. *See generally*, Dawson, *Lawyers and Involuntary Clients in Public Interest Litigation*, 88 Harv.L.Rev. 849 (1975).

But whatever the method of determination, the Court will not give an award of fees as large as plaintiffs' counsel request. The awarding of the requested fee in this case would be tantamount to a "windfall" at public expense; and the Court believes, for the sake of the legal profession's integrity, that even the appearance of having awarded such a windfall fee must be avoided. Plaintiffs' counsel might rightfully argue that attorneys in the private sector often earn the amount for which they ask, but the Court does not believe that such

fees, which are often excessive, provide the proper measure of compensation to be paid those seeking to vindicate identifiable public interest. *National Council of Community Health Centers, Inc. v. Weinberger*, 387 F.Supp. 991 (D.D.C.1974); *Manual for Complex Litigation*, § 1.47 (1977). The Court would note, in this respect, that the fee to be paid plaintiffs' counsel for serving as "private attorneys general" closely approximates that which has been paid the defendant's "public attorney general." This is as it should be. Section 1988 was passed neither for the benefit of attorneys nor to subsidize ACLU activities. It was passed to enable impoverished litigants to obtain competent counsel worthy of contest with the attorney available to the opposition. *Johnson, supra.* This has been accomplished in this case, and the Court believes the $16,525.00 fee awarded plaintiffs' counsel will not keep it from happening again.

Plaintiffs' counsel will also be permitted, in addition to attorney fees, $2,000.00 in costs. In reducing the costs request, the Court was particularly guided by its belief that local counsel could have sufficiently processed many aspects of this case which were left to East Coast counsel. The Court, therefore, had serious reservations as to the communication and commuting costs and has cut them accordingly.

## IV. ORDER FOR JUDGMENT

Consistent with the Court's findings herein,

IT IS ORDERED that defendant County's third-party action against the State of Iowa be dismissed.

IT IS FURTHER ORDERED that plaintiffs' counsel, pursuant to 42 U.S.C. § 1988, are entitled to a total of $18,525.00 in attorney fees and costs.