Janice Ann PAGE, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Victor PREISSER, Commissioner of the Iowa Department of Social Services, Marjorie Lidgett, Income Maintenance Administrator of the Pottawattamie County Office of the Iowa Department of Social Services, Jean Potter, Assistant Income Maintenance Administrator and ADC Supervisor for the Pottawattamie County Office of the Iowa Department of Social Services, individually and in their official capacities, Defendants.

Civ. No. 75–125–2.

United States District Court,
S. D. Iowa,
Central Division.

April 4, 1979.

John G. Hinde, Wendy E. Geertz, Marc A. Salle and Janice M. Woolley of Legal Services Corporation of Iowa, Council Bluffs, Iowa, for plaintiffs.

Stephen C. Robinson, Special Asst. Atty. Gen., and Theodore R. Boecker, Asst. Atty. Gen., Des Moines, Iowa, for defendants.

HANSON, Senior District Judge.

This matter is before the Court on plaintiffs' November 20, 1978 Motion for Award of Attorney's Fees and Costs. The action was maintained pursuant to 42 U.S.C. § 1983 and jurisdiction in this Court is predicated on 28 U.S.C. § 1343(3). On October 2, 1978 the United States Court of Appeals for the Eighth Circuit reversed this Court's earlier summary judgment in favor of defendants on the issue of whether certain Iowa administrative regulations governing the Aid to Families with Dependent Children program conflicted with applicable federal regulations so as to be void under the supremacy clause of the U.S. Constitution. By virtue of their successful appeal, plaintiff and the class she represents became a "prevailing party" within the meaning of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988[1] and entitled to fees thereunder.

Defendants have resisted the motion for fees. In a memorandum accompanying the resistance, defendants rely exclusively on their interpretation of this Court's memorandum and order on fees in *Alsager v. District Court of Polk County*, 447 F.Supp. 572 (S.D.Iowa 1977). The Court in that case reimbursed the American Civil Liberties Union (ACLU) for legal services provided by salaried counsel on the basis of the annual salaries paid and the time spent working on the case. *Id.* at 577. Plaintiffs' counsel in the instant case were or are salaried employees of the Legal Services Corporation of Iowa and its predecessor, the Legal Aid Society of Omaha—Council Bluffs, and if the Court understands coun-

---

1. Section 1988 provides in relevant part:

   . . . In any action or proceeding to enforce a provision of Sections . . . 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs.

sel's memorandum correctly "the award of fees and costs [here] is made directly to the public interest organization rather than to the plaintiffs or the attorneys themselves." Memorandum at 4. Since any fee award will apparently reimburse the Legal Services Corporation for the costs of its *pro bono publico* services and no part thereof will be received directly by the attorneys themselves, the principles articulated in *Alsager* would appear to apply. *Id.* at 577–79.

Counsel for plaintiffs too have devoted their efforts to an analysis of the *Alsager* opinion. Conceding that *Alsager* is applicable, counsel argue it was wrongly decided and maintain any fee award should be predicated on the hourly rate customarily charged by privately retained attorneys in the Council Bluffs area.

There appears to be no dispute that Section 1988 entitles plaintiffs to a reasonable attorney's fee, the concern is with how the fee should be calculated. On this score the submissions of the parties reveal a misunderstanding of the scope and intendment of *Alsager* with the result that the fee request is incomplete. In fairness to counsel, plaintiffs will be permitted to amend their motion accordingly.

▪▪▪ Contrary to what both plaintiffs and defendants appear to infer, *Alsager* does not draw any categorical line between public interest attorneys and privately-retained attorneys, nor does it stand for the proposition that attorney fees viewed under Section 1988 are exclusively determined on the basis of salary where a salaried attorney represents a civil rights plaintiff. *Alsager* simply stated means no more than that where an organization successfully undertakes the expense of representing a civil rights plaintiff through its salaried attorneys and no part of the fee award will compensate the attorneys involved, but instead will reimburse the organization in question, "the fact that an attorney is sala-

ried [affects] the method in determining the amount of fees to be awarded." 447 F.Supp. at 577. Thus where as here fees are sought not to pay the attorneys for their professional services, but to reimburse a public interest organization[2] for expenditures made in vindicating civil rights, determination of the cost of counsel under Section 1988 is affected by the amount of annual salary paid the respective attorneys. The hourly rate market value of the same services provided by attorneys in private practice bears a more remote relation to the actual cost of services provided by the public interest organization. Accordingly, *Alsager* is limited in its sweep. For example, salaried attorneys may seek fees for themselves over and above what their salary has provided them so long as they, and not the organization claiming reimbursement, get the fee. *Alsager* is relevant *only when an organization renders legal services through a salaried employee paid to provide such services, and the fee award is intended to reimburse the organization, not compensate the attorney.*

The mutual confusion of the parties over what *Alsager* held no doubt stems from a natural inclination to impart the facts and results of the case to its holding. Each of the three attorneys in *Alsager* was paid a salary by the American Civil Liberties Union (ACLU). 447 F.Supp. at 576. With one exception, none of the large fees requested in *Alsager* would have compensated any of the prevailing parties' attorneys, but, as the record in the case reflects, was to be paid to the ACLU. *See* 447 F.Supp. at 579. In finally determining the fee, the Court did not have before it any evidence beyond the attorneys' salaries (and the time spent) of other expenditures incurred by ACLU in providing legal services to the Alsagers. As a result, the fee in *Alsager* was ascertained primarily on the basis of the salaries paid to the respective attorneys, though one attorney who donated his services after he

---

**2.** Plaintiffs' counsel describe the Legal Services Corporation of Iowa as a "public interest organization." No particular generic meaning is intended by the Court in the use of this language, and whether *Alsager* is applicable de-

pends on the facts of each case. For example, consideration of salaries could well be appropriate where an organization represented by in-house salaried counsel was a prevailing party-plaintiff in a Section 1983 action.

ceased salaried employment with the ACLU was compensated on an hourly basis for that period of time. Apparently plaintiffs incorrectly infer from this fact that the Court implicitly held other elements in the overall cost of providing legal services were unavailable.

■ Thus plaintiffs contend:

In *Alsager* the Court felt that public interest organizations are sufficiently encouraged by bare reimbursement of the salaries of the attorneys involved. However, an award based on such a calculation does not compensate public interest attorneys for their overhead and expenses of running their offices although public interest law firms incur the same expenses as private firms while conducting similar litigation.

Plaintiffs' Memorandum at 7. Counsel for plaintiffs have read too much into *Alsager* to their own disadvantage. Nothing in *Alsager* precludes including reasonably ascertainable overhead expenses attributable to the particular litigation, including the cost of support personnel, in an award to be paid to a public interest organization such as the Legal Services Corporation of Iowa. The Court assumes from the above-quoted statement in plaintiffs' memorandum that the Corporation did have ascertainable overhead and support personnel expenses not included in attorney salaries and has not presented them because of its interpretation of *Alsager*. In an effort to avoid penalizing the Corporation for this omission, plaintiffs will be given an opportunity to amend the fee request.

In any event, the Court rejects plaintiffs' invitation to reconsider *Alsager*. None of the cases cited by plaintiffs reject the essential premise of *Alsager*—that Section 1988 authorizes reimbursement for the expense of litigation, including attorney fees,

and fee awards should be determined accordingly. Indeed, the Supreme Court recently was careful to note that Section 1988 "imposes attorney's fees 'as part of the costs' " of litigation, and observed that an award of costs is limited "to partially compensating a successful litigant for the expense of his suit . . . ." *Hutto v. Finney*, 437 U.S. 678, 695, 697 & n.27, 98 S.Ct. 2565, 2576, 2577 n.27, 57 L.Ed.2d 522 (1978). *Zoll v. Eastern Allamakee Community School District*, 588 F.2d 246 (8th Cir. 1978), relied on by plaintiffs, is apropos where the attorney seeking fees in fact charges a "regular hourly rate," *id.* at 252. The district court decision in *Gunther v. Iowa State Men's Reformatory*, 466 F.Supp. 367, No. C77–73 (N.D.Iowa, filed March 5, 1979), while recognizing that Section 1988 is directed at reimbursement, reflects the same misconception of *Alsager* under which plaintiffs labor here. On the other hand, the Eighth Circuit has recently recognized that no one or more of the oft-cited guidelines delineated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)[3] should be given talismanic significance in derogation of what constitutes a reasonable fee award, and was careful to preserve the district court's discretion in assaying the relative degree to which the *Johnson* guidelines are pertinent in any given case. *See Brown v. Bathke*, 588 F.2d 634, 637–38 (8th Cir. 1978).

To some extent the *Johnson* guidelines inhere in the approach taken in *Alsager*, and the two cases are not inconsistent. Though the guidelines are relevant in any context, their importance is logically diminished here in view of the fact that *Johnson* was predicated in substantial part on the fee setting provisions of the American Bar Association's Code of Professional Responsibility which are not germane to salaried

---

3. The *Johnson* guidelines are:

(1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform legal service properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

attorneys employed by an organization providing free legal services. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 719. Nonetheless, as this Court recognized in *Alsager*, if a public interest organization is paid significantly less through consideration of the salaries paid employed counsel than a private attorney would have charged and received, the net result, while literally reimbursing for the cost of legal services, might be counter-productive to the extent potential fee awards influence the settlement of litigation. *See* 447 F.Supp. at 578; *see generally* Note, *Awards of Attorney Fees to Legal Aid Offices*, 87 Harv.L.Rev. 411 (1973). Further, since fees "are an integral part of the remedy necessary to achieve compliance" with the civil rights acts, a disparate result might under some circumstances detract from the deterrent effect fee shifting is likely to have, S.Rep.No.94–1011, 94th Cong., 2d Sess. 3, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5908, 5910, or might fail to adequately reflect the intangible value of services rendered. *See* 447 F.Supp. at 579. Thus in *Alsager* the Court was careful to calculate the reasonable fee that would have been paid had counsel in that case been privately retained rather than salaried by the ACLU, and to compare the result with that reached on the basis of the salaries paid to counsel. The difference was not substantial enough to require the Court to consider whether the award should legitimately be enhanced. *See* 447 F.Supp. at 578–79. The same comparison is essential to the determination of any fee award to which the principles articulated in *Alsager* are applicable.

■■ Congress' primary concern in enacting Section 1988 was to recompense private attorneys general on whom enforcement of the various civil rights acts largely depends for the single largest cost of successful litigation, attorney's fees. *See* S.Rep.No.94–1011, *supra, reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5912, 5913. What constitutes a reasonable fee is cabined by this purpose. The Act was not intended to subsidize public interest organizations. Payment to an organization of more than what it takes to make the organization whole for its expenditures runs the risk of being unreasonable because it exceeds the cost of the services provided unless the excess serves other interests furthered by Section 1988 or the underlying civil rights acts in issue. *Alsager* attempts to provide an accurate measure of legal services where the award is intended to reimburse a public interest organization for the ascertainable cost of legal services furnished by it. It does so by factoring in the annual salaries paid to the attorneys in the case as an important, but not necessarily determinative or exclusive, consideration in setting a reasonable fee. Because both parties here have approached the matter of fees under a misapprehension of the scope of this Court's *Alsager* opinion, and in view of the fact that expenditures for overhead and support personnel salaries are mentioned in the briefs but not delineated by plaintiffs, the Court will permit plaintiffs to amend their motion for an award of fees to include these items. Defendants shall be afforded an opportunity to respond.

The Court parenthetically observes that the statements of hours expended by each of the four attorneys in this cause do not appear excessive, with the exception of some overlap in the cases of Ms. Woolley and Mr. Hinde. Indeed defendants do not appear to take serious issue with the time claimed.

In view of the foregoing,

IT IS ORDERED that plaintiffs may file an amended motion for award of attorney's fees and costs accompanied by appropriate affidavits within twenty (20) days of the date of this order;

IT IS FURTHER ORDERED that defendants shall, if they so desire, supplement their resistance to an award of attorney's fees within ten (10) days of the service of plaintiffs' amended motion, if any, upon them.