Nicholas **PALMIGIANO** et al.,
Plaintiffs, Appellees,

v.

J. Joseph **GARRAHY** et al.,
Defendants, Appellants.

Leonard **JEFFERSON** et al.,
Plaintiffs, Appellees,

v.

Bradford E. **SOUTHWORTH** et al.,
Defendants, Appellants.

Nos. 79–1183, 79–1185.

United States Court of Appeals,
First Circuit.

Submitted Nov. 9, 1979.

Decided March 3, 1980.

Dennis J. Roberts, II, Atty. Gen., and Eileen G. Cooney, Sp. Asst. Atty. Gen., Providence, R. I., on brief for defendants, appellants.

Matthew L. Myers, Providence, R. I., Alvin J. Bronstein, Washington, D. C., and Robert Mann, Providence, R. I., on brief, for plaintiffs, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is another round in the litigation about conditions at the Adult Correctional Institutions in Rhode Island. *See Palmigiano v. Garrahy*, 599 F.2d 17 (1st Cir. 1979). In this appeal the state defendants contest an award of attorney's fees totalling $115,483.75 made to the plaintiff prisoners under the Civil Rights Attorney's Fees Awards Act of 1976 (the Fees Act), Pub.L.No. 94—

559, 90 Stat. 2641 (amending 42 U.S.C. § 1988).[1] The prisoners were represented by four lawyers: three were employed by the National Prison Project of the privately funded American Civil Liberties Union and the fourth, Robert Mann, was in private practice. The defendants accept the fee award as it relates to Mr. Mann's services. In addition, they concede that fees may be awarded for the services of attorneys employed by a public interest organization such as the National Prison Project, and that the district judge weighed each of the twelve factors we have said must be considered in making a fee award under the Fees Act. *See King v. Greenblatt*, 560 F.2d 1024, 1026–27 (1st Cir. 1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). Nevertheless, the defendants contend that the district court erred in failing to consider the salaries of the National Prison Project lawyers in ʰcomputing a reasonable fee.

The district court understood the defendants to be arguing that the award for these lawyers' services must be limited to the actual cost to the National Prison Project in litigating the plaintiffs' lawsuits, as represented by the salaries paid counsel for the time spent on the cases.[2] In rejecting this argument, the district court considered itself bound by decisions of this court, particularly *Lund v. Affleck*, 587 F.2d 75 (1st Cir.

1978) and *Reynolds v. Coomey*, 567 F.2d 1166 (1st Cir. 1978), to compensate counsel on the same basis as private practitioners. *Palmigiano v. Garrahy*, 466 F.Supp. 732, 736 (D.R.I.1979); *Jefferson v. Southworth*, C.A. No. 77–544, slip op. at 18 (D.R.I. February 22, 1979). In addition, it found no support in other case law or the legislative history of the Fees Act for computing fees differently for a public interest organization and thought that lesser compensation would undermine certain purposes of fee awards: to deter illegal conduct, to encourage private enforcement of civil rights laws, and to attract competent counsel. *Palmigiano v. Garrahy, supra*, 466 F.Supp. at 736. The court also noted that the National Prison Project was prevented by its work in the present cases from applying its resources to other civil rights litigation; it added that the fee award in these cases would help to finance other such lawsuits. *Id.*

■ Because the district court relied substantially on first circuit cases in refusing to give weight to counsels' salaries, we begin by reviewing our own precedent. In *King v. Greenblatt, supra*, 560 F.2d at 1026–28, we announced that we would require courts awarding fees under the Fees Act to consider the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)[3] and af-

1. Two cases have been consolidated for appeal purposes. *Palmigiano v. Garrahy* was a successful class action challenging the overall conditions at the Rhode Island prisons as violative of the eighth amendment. 443 F.Supp. 956 (D.R.I.1977). In that case the district judge awarded $86,655.00 in attorney's fees. 466 F.Supp. 732 (D.R.I.1979). *Jefferson v. Southworth* was a successful challenge to a prolonged "lock-up" at the state's maximum security facility. 447 F.Supp. 179 (D.R.I.1978). In that case attorney's fees of $28,828.75 were awarded. C.A. No. 77–544 (D.R.I., unpublished opinion filed February 22, 1979, and order entered March 9, 1979).

2. At a hearing about attorney's fees in *Palmigiano v. Garrahy*, the state defendants argued to the district court that "it would be improper . . . to award these attorneys [the salaried employees of the National Prison Project] an amount in excess of their salary as computed and reflected in percentage of time spent on

this case[.]" On appeal, the state defendants' position is somewhat unclear, but appears to be that the actual cost of the litigation, as indicated by counsels' salaries, is *one factor* that should have been considered by the district court. Ordinarily a party may not shift his position on appeal; if there has been a shift in this case, it is immaterial to the outcome of the appeal.

3. The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the question presented; (3) the skill required to perform the legal services; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relation-

firmed a fee award to private counsel that seemed reasonable under the *Johnson* criteria. A lawyer's salary was not among the twelve criteria cited. To the contrary, the *Johnson* test focussed largely on the reasonable market value of the services rendered.

In *Reynolds v. Coomey, supra,* we were faced with an appeal from the denial of attorney's fees for the services of NAACP Legal Defense Fund staff attorneys. Reversing, we stated: "Attorney's fees are, of course, to be awarded to attorneys employed by a public interest firm or organization on the same basis as to a private practitioner." 567 F.2d at 1167. We instructed the district court to determine reasonable attorney's fees in the light of *King v. Greenblatt. Id.*[4] Likewise, in *Perez v. Rodriguez Bou,* 575 F.2d 21, 24 (1st Cir. 1978), we remanded for an award of attorney's fees for representation by the publicly funded Puerto Rico Legal Services, Inc., citing the above quoted language from *Reynolds v. Coomey. See also Perez v. University of Puerto Rico,* 600 F.2d 1, 2 (1st Cir. 1979), remanding the case a second time for a fee award consistent with *King v. Greenblatt.*

The next case involving a fee award to a legal services organization was *Lund v. Affleck, supra.* In that case, unlike *Reynolds* and *Perez,* the district court had awarded fees, which as here were assessed against Rhode Island officials. Although it is not altogether clear from our opinion, the Rhode Island defendants argued on appeal both that legal services organizations may not recover attorney's fees and, in the alternative, that recovery should be limited to their costs. 587 F.2d at 76; Brief for Defendants at 20–21, 25. We considered the first argument foreclosed by our recent decision in *Perez,* and upheld awards that had been made in accordance with *King v. Greenblatt,* with reference to billing rates of $55 and $60/hour. *Id.* at 76–78.

■ A review of these cases demonstrates that we have previously held that

public interest organizations (whether privately or publicly funded) be awarded attorney's fees under the Fees Act on the same basis as private practitioners. In *Lund,* especially, we were not impressed with the argument that attorney's fees to a legal services organization should be limited to the organization's costs. In this case the defendants would have us take a new approach. We decline to do so, and take this opportunity to explain why we adhere to our previously stated views.

■ First and foremost, we think that compensating public interest lawyers the same way as private practitioners is consistent with the legislative history of the Fees Act. The Senate Judiciary Committee Report, which states that fees are to be awarded according to the standards in *Johnson v. Georgia Highway Express, Inc.,* draws no distinction between employees of public interest organizations and members of the private bar. S.Rep.No. 1011, 94th Cong., 2d Sess. 6, *reprinted in* [1976] U.S. Code Cong. & Admin.News, pp. 5908, 5913. Indeed, the Senate Report cites with approval *Davis v. County of Los Angeles,* 8 EPD ¶ 9444 (C.D.Cal.1974), a Title VII case in which the court said, in determining the amount of attorney's fees to award:

> [I]t is not legally relevant that plaintiffs' counsel . . . are employed by the Center for Law in the Public Interest, a privately funded non-profit public interest law firm. It is in the interest of the public that such law firms be awarded reasonable attorneys' fees to be computed in the traditional manner . . .

*Id.* at ¶¶ 9444–45. The court made its award by calculating reasonable hourly rates and referring to the factors mentioned in *Johnson v. Georgia Highway Express, Inc. Id. See also Swann v. Charlotte-Mecklenburg Board of Education,* 66 F.R.D. 483, 486 (W.D.N.C.1975), also cited in the Senate Report. Likewise, the House Judiciary Committee Report, H.R.No. 1558,

ship with the client; (12) awards in similar cases.

4. Although *Reynolds* was a Title VII case, we treated the fee request the same as we would a request under the Fees Act.

94th Cong., 2d Sess. 8 n.16 (1976), cites civil rights cases squarely holding that fee awards may not be reduced because the prevailing party's attorney is employed by a civil rights or tax exempt organization. *Torres v. Sachs*, 538 F.2d 10, 13 (2d Cir. 1976) (award for services of Puerto Rico Legal Defense and Education Fund upheld); *Fairley v. Patterson*, 493 F.2d 598, 606–07 (5th Cir. 1974) (award to Lawyers Committee for Civil Rights Under Law reversed as too small).

Furthermore, we think that allowing full compensation for the services of public interest lawyers serves the clearly expressed legislative purpose of encouraging private enforcement of civil rights laws. S.Rep.No. 1011, *supra*, at 5; H.R.Rep.No. 1558, *supra*, at 2. As the district court pointed out, the National Prison Project, like other such organizations, has finite resources, and a full fee award will enable it to undertake further civil rights litigation.[5]

Second, we note that other courts have recently and convincingly rejected the notion that fee awards under the Fees Act (42 U.S.C. § 1988) or comparable statutes should be reduced or keyed to an attorney's salary when a prevailing party has been represented by a public interest organization. In *Rodriguez v. Taylor*, 569 F.2d 1231, 1247–48 (3rd Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978), an ADEA case, the third circuit discussed this issue at length and concluded that the district court had abused its discretion in considering the salaries of legal services lawyers in setting fees. Other cases refusing to set fees in accordance with salaries are *Lackey v. Bowling*, 476 F.Supp. 1111, 1116–17 (N.D.Ill.1979) (award to legal services organization under § 1988) and *Gunther v. Iowa State Men's Reformatory*, 466 F.Supp. 367, 368–69 (N.D.Iowa 1979) (award to Iowa Civil Liberties Union in Title VII case). *See also Beazer v. New York City Transit Authority*, 558 F.2d 97, 100 (2d Cir. 1977), *rev'd on other grds.*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979) (award under § 1988 should be calculated without regard to non-profit or public interest nature of the work).[6]

Third, we are not convinced by the defendants' suggestion that setting fees in this case without regard to the salaries paid by the National Prison Project results in an impermissible windfall to the organization. Of course, concern is expressed in the legislative history and in the case law that counsel not be unjustly enriched. *E. g.*, S.Rep.No. 1011, *supra*, at 6; *Sargeant v. Sharp*, 579 F.2d 645, 648 (1st Cir. 1978). We do not think, however, that compensating a public interest organization like the National Prison Project on the same basis as a private practitioner results in such a windfall, particularly when fees are expected to be used to finance more civil rights litigation. Indeed, we are concerned that compensation at a lesser rate would result in a windfall to the defendants. *See id.* at 649.

Finally, the panel decision in *Copeland v. Marshall*, 193 U.S.App.D.C. 219, 594 F.2d 244 (D.C.Cir.1978), does not persuade us to

---

5. The district court so observed in the course of addressing the fourth *King v. Greenblatt* factor: preclusion of other employment. *Palmigiano v. Garrahy*, 466 F.Supp. 732, 736 (D.R.I.1979). We cannot tell whether the district court merely refused to reduce the fees in part because they would help finance more litigation or whether the district court actually enhanced the award because the instant case precluded the National Prison Project from doing other work. We think it would have been inappropriate to apply the "preclusion" factor to enhance the award in a case like this, where counsel were not working for profit. *See Lamphere v. Brown University*, 610 F.2d 46, 47 (1st Cir. 1979) (the "preclusion" factor only applies when counsel had to forego more profitable opportunities). But, because we cannot be sure this was done and the defendants have made nothing of this issue on appeal, we see no need to disturb the award on this account.

6. The only cases we have found that hold to the contrary are *Page v. Preisser*, 468 F.Supp. 399 (S.D.Iowa 1979) and *Alsager v. District Court of Polk County, Iowa*, 447 F.Supp. 572 (S.D. Iowa 1977), decided by the same judge. These cases stand for the proposition that § 1988 awards to organizations whose employees are salaried should generally be limited to salaries plus other costs (such as overhead), at least where the result would not be to undermine the deterrent or inducement to settle effects of fee awards, or to undervalue the services rendered.

revamp our entire approach to attorney's fees. In that case, the court advocated a cost plus reasonable profit approach to calculating attorney's fees in a Title VII case where the federal government was the defendant. We are not at this point convinced that this approach would yield a fairer calculation of attorney's fees in a case like *Copeland*, and, for reasons stated above, we do not think a cost or salary related approach to computing attorney's fees in a case like this would be legitimate. We note, in any event, that the panel decision in *Copeland* has been vacated, that the case has been reheard *en banc*, and that a decision is still forthcoming. *See Copeland v. Marshall*, 48 U.S.L.W. 2017–18 (D.C.Cir. July 10, 1979).

*Judgments affirmed.*