Robert LONEY, Plaintiff,

v.

David SCURR, Warden of the Iowa State Penitentiary; et al., Defendants.

Civ. No. 72–177–2.

United States District Court,
S. D. Iowa.

Aug. 4, 1980.

Robert D. Bartels, Director, Prisoner Assistance Clinic; Barbara A. Schwartz, Prisoner Assistance Clinic; Iris Post and Sharon Elmore, Student Legal Interns, Iowa City, Iowa, for plaintiff.

Thomas J. Miller, Atty. Gen., of Iowa, John G. Black, Sp. Asst. Atty. Gen., and Stephen C. Robinson, Asst. Atty. Gen., Des Moines, Iowa, for defendants.

MEMORANDUM AND ORDER

WILLIAM C. HANSON, Senior District Judge.

Plaintiff[1] has prevailed in this long-drawn-out suit under 42 U.S.C. § 1983: he has vindicated his right under the First and Fourteenth Amendments to exercise his religion within the confines of the Iowa State Penitentiary. *See Remmers v. Brewer*, 361 F.Supp. 537 (S.D.Iowa 1973), *aff'd*, 494 F.2d 1277 (8th Cir.), *cert. denied*, 419 U.S. 1012, 95 S.Ct. 332, 42 L.Ed.2d 286 (1974), *on mo-*

_____

1. There were originally two plaintiffs in the case, Michael Remmers and Robert Loney. Remmers dropped out in September 1977.

*tion to reopen,* 396 F.Supp. 145 (S.D.Iowa 1975), *remanded,* 529 F.2d 659 (8th Cir. 1976), *on remand sub nom. Loney v. Scurr,* 474 F.Supp. 1186 (S.D.Iowa 1979). The only remaining questions are whether plaintiff's pending motion for an award of attorney's fees under 42 U.S.C. § 1988 (as amended) should be sustained, and, if so, how much the award should be. These questions have been briefed by the parties, and the Court finds that they can be resolved without further hearing.

■ 1. As amended by the Civil Rights Attorney's Fees Award Act of 1976, Pub. L.No. 94–559, 90 Stat. 2641, 42 U.S.C. § 1988 provides in relevant part that:

> In any action or proceeding to enforce a provision of section [ ] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

While § 1988 commits the question of allowance of attorney's fees to the discretion of the court, Congress intended, and the courts have held, that a prevailing § 1983 plaintiff "should ordinarily recover an attorney's fee

unless special circumstances would render such an award unjust." *See* S.Rep.No. 94–1011, 94 Cong., 2d Sess. 4 (1976), *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 4908, 4912; *Green v. Ten Eyck,* 572 F.2d 1233 (8th Cir. 1978). The burden of proof of such special circumstances is on the losing defendant. *Williams v. Miller,* 620 F.2d 199, 202 (8th Cir. 1980). Accordingly, the first question before the Court is whether defendants have established that there are special circumstances in this case that would render unjust the award of his reasonable attorney's fees to plaintiff.

■ The only such circumstance suggested by defendants is the status of plaintiff's attorney, Ms. Barbara Schwartz, who is a member of the faculty of the University of Iowa College of Law, and who has represented plaintiff in connection with her duties as a faculty supervisor in the College of Law's Prisoner Assistance Clinic (Clinic).[2] The University of Iowa is a state university. Ms. Schwartz's salary, part of which may be considered to be allocable to the legal services she rendered in this case,[3] is therefore derived ultimately from the public monies of the State of Iowa. Defendants are also employees of the State, and any attorney's

---

**2.** The Clinic is part of the curriculum of the College of Law. Students enroll in the Clinic for academic credit; they are then permitted under the rules of this and other courts to represent inmates, primarily from the Iowa State Penitentiary, in a wide variety of legal matters, always under the close supervision of their faculty supervisors. The duties of the faculty supervisors are inevitably twofold. On the one hand, much of the time they spend in connection with a given case is primarily educational, being devoted to discussing the case with the students working on it, criticizing student plans of action and drafts of court papers, and rehearsing in advance student court appearances. On the other hand, the supervisors must also discharge their duties under the Code of Professional Responsibility to see that the clients for which the Clinic has assumed responsibility are zealously and competently represented. These duties sometimes require the supervisors to act, not merely as teachers coaching their students, but directly as lawyers representing their clients. When the Clinic requests attorney's fees, as in this case, it does not charge for the time spent on the case by students, or for the primarily educational time spent by the faculty supervisors. Charges are made only for the direct lawyering activities

that the supervisors find it necessary to perform in order to insure that the case is properly litigated.

The Clinic receives cases from two sources—requests for legal assistance from inmates, and assignments or appointments from state and federal courts. On the same day that the pro se complaint was filed in this case, the Court appointed Mr. Robert Bartels, Director of the Legal Clinic at the College of Law (of which the Prisoner Assistance Clinic is a part), to represent plaintiffs. Since then, plaintiffs have been continuously represented by Mr. Bartels and a succession of other faculty supervisors and students in the Clinic. The supervisory mantle fell on Ms. Schwartz in 1977.

**3.** Plaintiff appears to contest this statement, by emphasizing that whereas the State is paying Ms. Schwartz primarily to be an educator (and, perhaps, a legal scholar), she is charging only for the "non-educational" time she found it necessary to spend on this case. The fact remains that all the time Ms. Schwartz spent is referrable to her duties as a faculty supervisor in the Clinic, duties for the discharge of which her salary is her recompense.

fees assessed against them will also be paid, on their behalf, ultimately out of the State's treasury. Defendants argue that plaintiff's attorney's fees have already been paid by the State—in the form of the allocable portion of Ms. Schwartz's salary—and that it would be unjust to require the State to pay again for the same legal services by awarding him attorney's fees under § 1988.

Precisely this argument has been rejected once already by this Court. *See Rinehart v. Brewer,* Civ.No. 77–244–2 (S.D.Iowa, order filed Apr. 3, 1979). The superficial plausibility of the argument derives mainly from the assumption implicit in it that any attorney's fees awarded would be paid to Ms. Schwartz herself, who has already been paid for the legal services she has rendered. In fact, however, the money will go, not to re-pay Ms. Schwartz, but to a fund maintained by the Clinic from which are paid various of the costs the Clinic incurs in providing legal services to its many clients.[4,5] This Court noted in *Rinehart* that "[t]he program [of the Clinic] is a long continuing one in this district and over the years has worked to provide needed and competent representation to a class of litigants often inadequately served by the private bar." We also said that in its role as a provider of legal services (as distinguished from its role as part of the curriculum of the College of Law), the Clinic is "functionally indistinguishable from any other publicly funded legal service group. Such groups have in the past been awarded attorney's fees under section 1988 for services in successfully representing indigent civil rights plaintiffs. *E. g., Card v. Dempsey,* 445 F.Supp. 942, 944–45 (E.D.Mich.1978).[6]" Any lingering doubt in this Circuit about the propriety of such awards has recently been laid to rest:

> [W]e conclude it is inappropriate [for § 1988 purposes] to consider that the prevailing plaintiff's attorney was working for a legal aid organization. The basic purpose of section 1988—to encourage enforcement and observance of civil rights—permits no distinction between private attorneys and legal aid organizations. Legal aid organizations can expand their services to indigent civil rights complain[ants] by virtue of their receipt of attorney's fees.[10] And a defendant sued by a plaintiff retaining legal aid counsel should not be benefited by the fortuity that the plaintiff could not afford private counsel. Thus, whether the focus is on enabling suit by those otherwise unable to afford litigation, or on deterring misconduct by imposing a monetary burden upon the wrongdoer, a legal

---

**4.** This fact disposes of defendants' suggestion that an award of attorney's fees in this case would result in a violation of § 68B.6, Code of Iowa (1979), which provides that:

> No official, employee, or legislative employee [of the State of Iowa] shall receive, directly or indirectly, or enter into any agreement, express or implied, for any compensation, in whatever form, for the appearance or rendition of services by himself or another against the interest of the state in relation to any case, proceeding, application, or other matter before any state agency, any court of the state of Iowa, any federal court, or any federal bureau, agency, commission or department.

Judge McManus rejected several years ago the argument that § 68B.6 would prohibit Clinic faculty supervisors, as *salaried* employees of the State of Iowa, from representing Clinic clients against the State in the federal courts. *See Triplett v. Azordegan,* 421 F.Supp. 998 (N.D.Iowa 1976).

**5.** The fund in question is actually maintained by the Legal Clinic of which the Prisoner As-

sistance Clinic is a part. Most of the expenditures from the fund are attributable to the Prisoner Assistance Clinic, going to pay costs of travel, telephoning, duplicating, and litigation. The fund derives its monies largely from attorney's fees paid in state and federal court cases. While checks for such fees typically are made payable to individual faculty supervisors, they are deposited directly into the fund; the supervisors do not personally receive any of the money, which is not income to them for tax purposes.

**6.** *See also Mid-Hudson Legal Services, Inc. v. G & U, Inc.,* 578 F.2d 34 (2d Cir. 1978); *Perez v. Rodriguez Bou,* 575 F.2d 21, 24 (1st Cir. 1978); *Barrett v. Kalinowski,* 458 F.Supp. 689, 701 (M.D.Pa.1978); *Regalado v. Johnson,* 79 F.R.D. 447, 451 (E.D.Ill.1978). *Cf. Rodriguez v. Taylor,* 569 F.2d 1231, 1245–46 (3d Cir. 1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Incarcerated Men of Allen County Jail v. Fair,* 507 F.2d 281, 286 (6th Cir. 1974).

aid organization merits an attorney's fee fully as much as does the private attorney. [Citations omitted.]

[10] As the sentence in text implies, the attorney's fee awarded in this case will go not to the individual attorneys but to their legal aid organization employers.

*Oldham v. Ehrlich*, 617 F.2d 163, 168–69 (8th Cir. 1980). In short, plaintiff—and hence the Prisoner Assistance Clinic—is entitled to his award of reasonable attorney's fees.

■ 2. Plaintiff has requested that the amount of the award be $19,410.27. This figure represents 351.05 hours of work by Ms. Schwartz, billed at $50 an hour, plus $1,857.77 in miscellaneous costs incurred by the Clinic since 1977 in litigating the case. Defendants have challenged no element of these latter costs; the Court finds them to be reasonable; and they will be awarded as part of plaintiff's attorney's fees.

Ms. Schwartz has not charged for time spent on the case by Clinic students, or time she spent supervising student work. *See* n.2, *supra.* Nor has any bill been submitted for the time spent by any of the faculty supervisors who preceded Ms. Schwartz on the case. The result is that substantially less time is charged for than was reasonably spent. The Court finds that all 351.05 hours of work billed for should be paid for.

It remains only to determine the hourly fees that should be paid. The Court has carefully considered the factors bearing on this question enumerated in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974) and approved by the Eighth Circuit in *Zoll v. Allamakee Community School District*, 588 F.2d 246 (8th Cir. 1978),[7] and finds that a reasonable fee for Ms. Schwartz's 351.05 hours of work is generated by requiring payment at the following rates: $50 an hour for in-court time; $35 an hour for out-of-court legal work; and $20 an hour for travel time. Ms.

Schwartz's Schedule of Time Spent discloses that she spent 29 hours in the first category, 275.05 hours in the second, and 47 hours in the third. The fee generated by billing for these times at these rates is $12,016.75.

In reducing the requested flat hourly rate as indicated, the Court has been influenced by the following considerations: (1) when Ms. Schwartz took over the case in 1977, the substantive law of the case was settled, *see Loney v. Scurr, supra*, 474 F.Supp. at 1192, and essentially only factual issues remained to be determined (or re-determined); the issues therefore cannot be said to have been particularly novel or difficult; (2) the skill requisite to perform the legal services performed by Ms. Schwartz was ordinary skill; (3) no severe time limitations were imposed by plaintiff or by the circumstances of the case; (4) the case was in no way "undesirable;" (5) when the bulk of her work on the case was done in 1977, Ms. Schwartz had been out of law school for only two years; (6) while plaintiff has submitted evidence that the customary fee charged in 1979 and 1980 by a 1975 law school graduate would be $50 an hour, the fee charged by such a person in 1977 and 1978 would have been lower; and (7) in *Rinehart, supra*, a case similar in many ways to this one, this Court awarded fees to the Clinic at the rate of $50 an hour for in-court time and $25 an hour for out-of-court time; in another recent § 1988 case Judge O'Brien awarded only $30 an hour for legal work and $20 an hour for travel time, *see Pinnecke v. Preisser*, No. C 7703023 (N.D.Iowa, order filed Sept. 25, 1979). All things considered, the Court believes that the hourly rates here allowed are entirely reasonable.

Accordingly.

IT IS ORDERED that plaintiff's motion for attorney's fees is sustained; pursuant to

---

7. Although defendants have suggested that the Court apply in this case the approach to the computation of award amounts taken in *Page v. Preisser*, 468 F.Supp. 399 (S.D.Iowa 1979) and *Alsager v. District Court*, 447 F.Supp. 572 (S.D.Iowa 1977), this Court has already determined that that approach does not apply to

awards made to the Clinic. *See Rinehart v. Brewer, supra.* In any case, the Court recognizes that the *Page-Alsager* approach has been undercut by *Oldham v. Ehrlich, supra*, at least where legal services organizations like the Clinic (as opposed to public interest groups like the ACLU) are concerned.

42 U.S.C. § 1988 such fees are awarded as part of the costs of this action in the total amount of $13,874.52.